**GREENBERG TRAURIG, LLP**
Alex Linhardt (SBN 303669)
*linhardta@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.: 310-586-7700; Fax: 310-586-7800

**GREENBERG TRAURIG, LLP**
Michael J. Grygiel (*pro hac vice*)
*grygielm@gtlaw.com*
Kelly L. McNamee (*pro hac vice*)
*mcnameek@gtlaw.com*
Christina N. Hernsdorf (SBN 330987)
*Christina.Hernsdorf@gtlaw.com*
54 State Street, 6th Floor
Albany, NY 12207
Tel.: 518-689-1400

Attorneys for Defendants INFOBLOX INC.
and RENÉE BURTON

# UNITED STATES DISTRICT COURT OF CALIFORNIA

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SKYFORGE DIGITAL AG, a Switzerland corporation, and TEKNOLOGY SA, a Switzerland corporation, <br><br> Plaintiffs, <br><br> v. <br><br> INFOBLOX INC., a Delaware corporation, and RENÉE BURTON, in her individual capacity, <br><br> Defendants. | CASE NO. 5:25-cv-09502-PCP <br><br> Assigned to Hon. P. Casey Pitts <br> Magistrate Judge Susan van Keulen <br> Courtroom 8 <br><br> **DEFENDANTS' NOTICE OF MOTIONS AND [1] MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6), AND [2] SPECIAL MOTION TO STRIKE PURSUANT TO CALIFORNIA ANTI-SLAPP STATUTE, CAL. CODE OF CIV. PROC. § 425.16; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> [Concurrently filed with Declaration of Renée Burton] <br><br> Date:       February 19, 2026 <br> Time:       10:00 a.m. <br> Place:      Courtroom <br><br> Action Filed:    November 4, 2025 <br> Trial Date:     None Set |

1

**NOTICE OF MOTIONS AND MOTIONS TO DISMISS:**

2

TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

**PLEASE TAKE NOTICE** that, on February 19, 2026, at 10:00 a.m., or as soon thereafter as the

4

matter may be heard, before the Honorable P. Casey Pitts, United States District Judge for the Northern

5

District of California, located in Courtroom 8 at the Robert F. Peckham Courthouse, 280 South First Street,

6

San Jose, CA 95113, Defendants Infoblox Inc. and Renée Burton will, and hereby do, move the Court: (1)

7

to dismiss the Complaint as to Defendant Burton pursuant to Fed. R. Civ. P. 12(b)(2) and as to both

8

Defendants under Fed. R. Civ. P. 12(b)(6); and (2) to strike the Complaint and award Defendants their

9

reasonable attorneys' fees and costs per California Code of Civil Procedure section 425.16.

10

Defendant Burton's motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction should

11

be granted because the only connection Plaintiffs plausibly allege between Burton and California is that

12

Burton is employed by a California-based company.  Both Defendants are entitled to dismissal pursuant to

13

Rule 12(b)(6) because Plaintiffs fail to state any claim against them.  The Complaint fails to state a claim

14

for defamation because the vast majority of the challenged statements are not "of and concerning" either

15

Plaintiff, because the Complaint fails sufficiently to plead that any of the disputed statements are false, and

16

because several of the challenged statements convey no defamatory meaning and/or are nonactionable

17

expressions of opinion.  Plaintiffs fail to state a claim for false light because, as corporate entities, they

18

cannot assert a false light claim.  The Complaint fails to state a claim for interference with contract because

19

the First Amendment bars their claim.  Plaintiffs fail to state a claim under the Lanham Act because they

20

fail to plausibly allege the elements of their claim, including that Defendants made a false statement of fact

21

about Plaintiffs' products in the course of commercial advertising.  Plaintiffs fail to state a claim for civil

22

conspiracy because civil conspiracy is not a standalone cause of action.

23

These Motions are based on this Notice of Motions and Motions, the accompanying Memorandum

24

of Points and Authorities, the concurrently filed Declaration of Renée Burton, and all pleadings, arguments,

25

and matters before the Court.

26

27

28

Dated: January 9, 2026

**GREENBERG TRAURIG, LLP**

By: */s/ Alex Linhardt*
Michael J. Grygiel (*pro hac vice*)
*grygielm@gtlaw.com*
Kelly L. McNamee (*pro hac vice*)
*mcnameek@gtlaw.com*
Christina N. Hernsdorf (SBN 330987)
*Christina.Hernsdorf@gtlaw.com*
54 State Street, 6th Floor
Albany, NY 12207
Tel.: 518-689-1400

**GREENBERG TRAURIG, LLP**
Alex Linhardt (SBN 303669)
*linhardta@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.: 310-586-7700; Fax: 310-586-7800

*Attorneys for Defendants Infoblox Inc.
and Renée Burton*

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................3

I.      INTRODUCTION .................................................................................................3

II.     FACTUAL BACKGROUND ...............................................................................5

    A.      The Parties. ................................................................................................5

    B.      Infoblox's Investigation Into and Publications Regarding "VexTrio." .....5

    C.      The Complaint's Allegations and Causes of Action. .................................5

III.    LEGAL STANDARD ...........................................................................................6

IV.     ARGUMENT .......................................................................................................7

    A.      This Court Does Not Have Personal Jurisdiction Over Defendant Burton. .............7

    B.      The Anti-SLAPP Statute Applies to Plaintiffs' Claims. ...........................9

        1.      California's Anti-SLAPP Statute Applies in Federal Court. .........9

        2.      The Anti-SLAPP Statute Is Construed Broadly. ......................10

        3.      The Challenged Speech Implicates an Issue of Public Interest. ..................11

    C.      The Complaint Fails to State a Claim for Defamation. ...........................12

        1.      The Vast Majority of the Challenged Statements Are Not "Of and Concerning" Skyforge or Teknology. ......................12

        2.      The Complaint Fails Sufficiently to Plead That Any of the Challenged Statements Are False. ......................16

        3.      Several of the Challenged Statements Fail to Convey a Defamatory Meaning. .........18

        4.      Certain of the Challenged Statements Are Constitutionally Protected Statements of Opinion. ......................19

    D.      The Complaint Fails to State a Claim for False Light. ............................20

    E.      The Complaint Fails to State a Claim for Interference with Contract. ....................21

    F.      The Complaint Fails to State a Claim Under the Lanham Act. ...............22

    G.      The Complaint Fails to State a Claim for Civil Conspiracy. ...................23

V.      CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amendment Praetorian v. New York Times Company*,
  2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ....................................................................... 17

*AccuImage Diagnostics Corp v. Terarecon, Inc.*,
  260 F. Supp. 2d 941 (N.D. Cal. 2003) ............................................................................ 23

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ....................................................................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 6, 11, 17

*Automated Pet Care Products, LLC v. PurLife Brands, Inc.*,
  703 F. Supp. 3d 1022 (N.D. Cal. 2023) (Pitts, J.) ...................................................... 22, 23

*Baffert v. Wunderler*,
  No. 23-cv-1774-RSH-BLM, 2024 WL 5237441 (S.D. Cal. Aug. 27, 2004) ...................... 13

*Barger v. Playboy Enterprises., Inc.*,
  564 F. Supp. 1151 (N.D. Cal. 1983) ................................................................................ 16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 6

*Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*,
  39 F.3d 191 (11th Cir. 1995) .......................................................................................... 21

*Bielma v. Bostic*,
  No. 15CV1606-MMA (BLM), 2016 WL 29624 (S.D. Cal. Jan. 4, 2016) .......................... 15

*Blatty v. New York Times Company*,
  42 Cal. 3d 1033 (1986) ...................................................................................... 12, 13, 16, 21

*Briggs v. Eden Council for Hope & Opportunity*,
  19 Cal.4th 1106 (1999) ..................................................................................................... 10

*Cabello-Rondón v. Dow Jones & Co., Inc.*,
  No. 16-CV-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ...................... 16, 18

*Children's Health Defense v. Facebook Inc.*,
  546 F. Supp. 3d 909 (N.D. Cal. 2021) ............................................................................. 23

*Church of Scientology v. Flynn*,
  578 F. Supp. 266 (D. Mass 1984) .................................................................................... 15

*ComputerXpress, Inc. v. Jackson*,
    93 Cal. App. 4th 993 (2001) .................................................................................20

*Cook v. UPS Cartage Services.*,
    No. 2:18-cv-01182-MCE-KJN, 2018 WL 5013669 (E.D. Cal. Oct. 15, 2018) ...................17

*Crittendon v. Muldrow*,
    No. 22-CV-09153-RS, 2023 WL 2743582 (N.D. Cal. Mar. 31, 2023)........................17, 22

*Daniel v. City of Glendale*,
    No. CV 14-3864 VAP (AJW), 2015 WL 5448562 (C.D. Cal. Mar. 19, 2015) ....................20

*Davis v. Cranfield Aerospace Solutions, Ltd.*,
    71 F.4th 1154 (9th Cir. 2023) .................................................................................8

*Davis v. Metro Productions, Inc.*,
    885 F.2d 515 (9th Cir. 1989) ..................................................................................9

*De Witt v. Wright*,
    57 Cal. 576 (1881)...............................................................................................13

*Doe v. Gangland Productions, Inc.*,
    730 F.3d 946 (9th Cir. 2013) ................................................................................12

*Eliott v. Lions Gate Entertainment Corp.*,
    639 F. Supp. 3d 1012 (C.D. Cal. 2022).............................................................10, 11

*FilmOn.com Inc. v. DoubleVerify Inc.*,
    7 Cal.5th 133 (2019)............................................................................................12

*Flowers v. Carville*,
    310 F.3d 1118 (9th Cir. 2002) .................................................................................7

*Foundation for Anime & Niche Subcultures v. Texas Anime Conventions*,
    769 F. Supp. 3d 1034 (N.D. Cal. 2025) (Pitts, J.)......................................................6

*Geiser v. Kuhns*,
    13 Cal.5th 1238 (2022).........................................................................................12

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974) .............................................................................................19

*GetFugu, Inc. v. Patton Boggs LLP*,
    220 Cal. App. 4th 141 (2013) ................................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ............................................................................................7, 8

*Harris v. City of Seattle*,
   315 F. Supp. 2d 1112 (W.D. Wash. 2004) .................................................7

*Heller v. NBC Universal, Inc.*,
   *No.* CV-15-09631-MWF-KS, 2016 WL 6583048 (C.D. Cal. June 29, 2016).................11

*Herring Networks, Inc. v. Maddow*,
   8 F.4th 1148 (9th Cir. 2021) .......................................................9, 10

*Holomaxx Technologies Corporation. v. Microsoft Corp.*,
   783 F. Supp. 2d 1097 (N.D. Cal. 2011)...............................................20

*Hunter v. CBS Broadcasting, Inc.*
   221 Cal. App. 4th 1510 (2013) ......................................................11

*Kamath v. Itria Ventures, LLC*,
   No. 23-CV-05153-SVK, 2024 WL 590603 (N.D. Cal. Feb. 13, 2024) ...................17

*Kennedy Funding, Inc. v. Chapman*,
   No. C 09-01957 RS, 2010 WL 4509805 (N.D. Cal. Nov. 1, 2010).....................21

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006) ......................................................4, 15

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ......................................................18

*Mahoney v. Meta Platforms, Inc.*,
   710 F. Supp. 3d 771 (N.D. Cal. 2024)...............................................13

*Matthews v. Apple, Inc.*,
   769 F. Supp. 3d 999 (N.D. Cal. 2024)...............................................23

*Metabolife International, Inc. v. Wornick*,
   264 F.3d 832 (9th Cir. 2001) .......................................................10

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990) ..................................................................19

*Minsurg International Inc. v. Frontier Devices, Inc.*,
   2011 WL 1326863 (M.D. Fla. Apr. 6, 2011).........................................18

*Mulato v. Wells Fargo Bank, N.A.*,
   76 F. Supp. 3d 929 (N.D. Cal. 2014)................................................9

*New York Times Company v. Sullivan*,
   376 U.S. 254 (1964) .............................................................7, 13

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002)..................................................................................................11

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
    190 F.3d 963 (9th Cir. 1999) .......................................................................................9

*Nicosia v. De Rooy*,
    72 F. Supp. 2d 1093 (N.D. Cal. 1999)........................................................................20

*Norse v. Henry Holt & Co.*,
    991 F.2d 563 (9th Cir. 1993) .....................................................................................18

*Nygård, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) .............................................................................10, 11

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022).......................................................................6

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
    890 F.3d 828 (9th Cir. 2018) .....................................................................................11

*Price v. Stossel*,
    620 F.3d 992 (9th Cir. 2010) .....................................................................................16

*Redco Corp. v. CBS, Inc.*,
    758 F.2d 970 (3rd Cir. 1985) .....................................................................................21

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999)..........................................................................11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .......................................................................................7

*SDV/ACCI, Inc. v. AT&T Corp.*,
    522 F.3d 955 (9th Cir. 2008) ................................................................................12, 13

*Sovereign Asset Mgmt. v. Health Net Life Insurance Co.*,
    No. CV189360FMODFMX, 2019 WL 4640397 (C.D. Cal. Sept. 10, 2019)....................15

*Sussman v. Playa Grande Resort, S.A. DE C.V*,
    839 F. App'x 166 (9th Cir. 2021) ................................................................................9

*Thomas v. Los Angeles Times Commcations, LLC*,
    189 F. Supp. 2d 1005 (C.D. Cal. 2002)........................................................................9

*UMG Recordings, Inc. v. Global Eagle Enterprises, Inc.*,
    117 F. Supp. 3d 1092 (C.D. Cal. 2015).......................................................................21

*Unelko Corp. v. Rooney*,
    912 F.2d 1049 (9th Cir. 1990) ...................................................................................21

*Varian Medical Systems, Inc. v. Delfino*,
    35 Cal. 4th 180 (2005) ...........................................................................................10

*Weyrich v. New Republic*,
    235 F.3d 617 (D.C. Cir. 2001) .................................................................................19

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004) ..................................................................................12

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) ..................................................................................................7

**Statutes**

California Code of Civil Procedure § 425.16 ..................................................................*passim*

15 U.S.C. § 1125(a)(1)(B) .............................................................................. 6, 22, 23

**Other Authorities**

Robert D. Sack, SACK ON DEFAMATION (5th ed. 2017) ...................................................... 15, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Defendants Infoblox Inc. and Renée Burton respectfully move pursuant to Federal Rule of Civil Procedure 12 to dismiss the Complaint filed by Plaintiffs Skyforge Digital AG and Teknology SA. In addition, Defendants move to strike the Complaint and recover their costs and attorneys' fees based on California's anti-SLAPP law, which authorizes courts to put an early end to litigation claims that "chill the valid exercise of the constitutional rights of freedom of speech." Cal. Civ. Proc. Code § 425.16(a).

By any measure, this lawsuit blatantly disregards that the First Amendment's core values protect the free flow of information on matters of public interest. The Complaint challenges Defendants' reporting on the opaque and convoluted relationships between, and cross-boundary internet infrastructure maintained by, various threat actors that engage in malicious online adtech practices and campaigns. By focusing on this shadowy network of affiliations and their operations, which includes "nearly a hundred companies and brands" Defendants have designated as "VexTrio," Defendants' speech contributed to public discourse on significant cybersecurity issues having global implications. (Compl. ¶ 59(vi).)

Even before reaching the constitutional merits of Plaintiffs' claims, their Complaint should be dismissed as to Defendant Burton under Rule 12(b)(2) for lack of personal jurisdiction. The only connection alleged in the Complaint between Ms. Burton, a resident of Washington state, and California is that she works for a California-based company. Plaintiffs are corporations based in Switzerland, and do not even allege they were injured in California. The Constitution's Due Process Clause does not permit this Court to exercise personal jurisdiction based on Ms. Burton's out-of-state expressive activity.

The Complaint, which indiscriminately alleges that no less than thirty-five statements ("Challenged Statements") published by Defendants are defamatory, should be dismissed in its entirety against both Defendants pursuant to Rule 12(b)(6). None of the Challenged Statements can provide the basis for a viable cause of action for defamation (or other tort claim), for multiple reasons. *First*, the vast majority of the Challenged Statements make no mention of or otherwise identify either Plaintiff. While indulging the notion that they are portrayed as part of the murky constellation of cyber-threat actors illuminated by Defendants, Plaintiffs fail to plead their specific corporate relationships (or other connections) to the online platforms and

numerous associated entities comprising VexTrio.  By proceeding on what amounts to a "guilt by association" theory of recovery, Plaintiffs are unable to demonstrate that virtually any of the statements they dispute are "of and concerning" them, a bar to recovery in defamation.  Indeed, the very opacity Plaintiffs rely on to insulate their activities with plausible deniability precludes them from satisfying the threshold "of and concerning" requirement, which "stands as a significant limitation on the universe of those who may seek a legal remedy for communications they think to be false and defamatory and to have injured them." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 399–400 (2d Cir. 2006).  *Second*, the Complaint fails to sufficiently allege the most basic element of a defamation claim: a false and defamatory statement of fact.  It does not allege, as it must, how each Challenged Statement is false or what Plaintiffs contend the truth to be.  *Third*, Plaintiffs dispute several statements that fail to convey a defamatory meaning.  *Fourth*, certain of the Challenged Statements express subjective interpretations that employ exaggerated rhetoric.  These statements are protected opinion and are not actionable as a matter of law.

Whatever tort theory on which Plaintiffs attempt to rely, the Complaint is deficient.  Plaintiffs fail to state a claim for false light because, as corporate entities, they are prohibited from asserting such a claim as a matter of law.  The Complaint fails to state a claim for interference with contract, which is barred in this context by the First Amendment.  Plaintiffs also fail to plausibly allege the elements of such a claim.  The Complaint's Lanham Act claim should be dismissed, *inter alia*, for failure to plead that Defendants made a false statement of fact about Plaintiffs' products in the course of commercial advertising.  Finally, Plaintiffs' civil conspiracy claim is defective because such a claim is not a standalone cause of action under California law.

Plaintiffs' *ad hoc* assortment of speech-based tort claims is also subject to California's anti-SLAPP statute, which applies to claims arising from speech addressing "an issue of public interest."  Cal. Civ. Proc. Code, § 425.16(e)(3)-(4).  For the same reasons the Complaint fails under Rule 12(b)(6), Plaintiffs will be unable to show a probability of success on any of the causes of action alleged in the Complaint, which run headlong into the First Amendment.  Defendants' motion to strike Plaintiffs' claims should therefore also be granted in its entirety, along with an award of Defendants' costs and attorneys' fees.

1

## II.   FACTUAL BACKGROUND[1]

### A.   The Parties.

Defendant Infoblox Inc. ("Infoblox") is an information technology automation and security company that publishes detailed threat intelligence research and develops a variety of solutions designed, *inter alia*, to protect against cyber threats.  (Compl. ¶ 42.)  Defendant Renée Burton — a resident of King County, Washington  — has held a Vice President position at Infoblox since April 2024.  (*Id.* ¶ 17.) Plaintiff Skyforge Digital AG ("Skyforge") is a Swiss holding company whose subsidiaries "operate[] several internet-based platforms," including Los Pollos, Tacolo.co, and Adtrafico (collectively, the "Platforms"). (Compl. ¶¶ 14–15, 22–23; Compl. Ex. 7 at Appendix 1–2.)  Plaintiff Teknology SA ("Teknology") is a Swiss company that contracts with Skyforge to provide Skyforge with servers to operate its affiliate-marketing network.  (Compl. ¶ 32.)

### B.   Infoblox's Investigation Into and Publications Regarding "VexTrio."

On June 6, 2022, after months of tracking and investigation, Infoblox's Threat Intelligence Group released a Cyber Threat Advisory regarding malicious campaigns that use domains generated by a dictionary domain generation algorithm ("DDGA") to run scams and spread riskware, spyware, adware, potentially unwanted programs, and pornographic content. (Compl. ¶ 58 n. 8.) The Cyber Threat Advisory referred to the DDGA family and activity referenced therein collectively as "VexTrio." (*Id.*)  Since then, Infoblox has continued to investigate the malicious traffic distribution systems and adtech companies that make up VexTrio, and has continued to speak out against VexTrio's illicit online schemes via various blog posts, presentations, and podcasts, including those identified in the Complaint at paragraphs 85 through 118 (the "Publications").  (*See* Compl. ¶¶ 85–118.)

### C.   The Complaint's Allegations and Causes of Action.

Apparently perturbed by the facts uncovered during the course of Infoblox's investigation and the uncomfortable questions the Publications beget, Skyforge and Teknology instituted this action on November 4, 2025.  Their Complaint asserts causes of action for defamation and defamation *per se*, false

---

[1] This section is derived from the factual allegations of the Complaint (Docket No. 1), which Defendants accept as true for the limited purpose of the instant motion.

light, intentional interference with contract, violation of the Lanham Act, and civil conspiracy, each of which purportedly arise out of 35 specific statements (the "Challenged Statements") included in the Publications.  (Compl. ¶¶ 87, 91, 95, 98, 100, 118.)  Of the 35 Challenged Statements, only 3 identify Teknology or Skyforge.  (*Id.*)

## III.   **LEGAL STANDARD**

If a court lacks personal jurisdiction over a defendant, the complaint must be dismissed as to that defendant.  *See* Fed. R. Civ. P. 12(b)(2); *Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*, 769 F. Supp. 3d 1034, 1041–42 (N.D. Cal. 2025) (Pitts, J.) (granting motion to dismiss for lack of personal jurisdiction without leave to amend).  "In opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden to prove that the Court's exercise of personal jurisdiction over the moving defendant is appropriate."  *Id.* at 1039 (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).  "On such a motion, the Court can consider evidence contained in affidavits and is not limited to the allegations of the plaintiff's complaint."  *Id.* (citing *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002)).  "'[B]are bones assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden.'"  *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022) (citation omitted), *aff'd sub nom.*, *O'Handley v. Weber*, 62 F.4th 1145, 1164 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 2715 (2024).

To survive a Rule 12(b)(6) motion to dismiss, the pleading must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  The Court need not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citations omitted).

Because Plaintiffs' claims directly implicate Defendants' First Amendment right to report on significant issues of public interest, in evaluating Defendants' Motions the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues

should be uninhibited, robust, and wide-open[.]" *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In furtherance of this principle, the Ninth Circuit has emphasized that courts should consider First Amendment concerns even at the pleading stage. "[W]here a plaintiff seeks damages . . . for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (quotations omitted) (quoting *Franchise Realty Interstate Corp. v. S.F. Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082–83 (9th Cir. 1976)). "Defamation claims, in particular, must be advanced with sufficient specificity," *Harris v. City of Seattle*, 315 F. Supp. 2d 1112, 1123 (W.D. Wash. 2004), including "the precise statements alleged to be false and defamatory, who made them and when." *Flowers*, 310 F.3d at 1131.

## IV. **ARGUMENT**

### A. **This Court Does Not Have Personal Jurisdiction Over Defendant Burton.**

As a threshold point, this Court should dismiss the Complaint as to Defendant Burton pursuant to Rule 12(b)(2) (in addition to Rule 12(b)(6), discussed below) because this Court lacks personal jurisdiction over Defendant Burton. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (citations omitted). Due process requires that a non-resident defendant "must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Id.* at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (due process analysis should address whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" (citations omitted)). General jurisdiction over a defendant exists only if her "affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). In the Ninth Circuit, a court may exercise specific jurisdiction over a non-resident defendant only where: (1) the defendant has purposefully directed her activities or consummated

some transaction with the forum or resident thereof, or performed some act by which she purposefully avails herself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice — *i.e.,* it must be reasonable. *See Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161–62 (9th Cir. 2023).

Defendant Burton lacks the minimum contacts with California that due process requires for this Court to exercise either general or specific jurisdiction over her in this action. As Plaintiffs acknowledge, Burton is a resident of Washington state — not California. (Compl. ¶ 17; Burton Decl. ¶¶ 5, 7, 8.) Although Burton is employed by a California-based company, Infoblox, she does not personally work in California. (Burton Decl. ¶ 5.) Plaintiffs do not allege that Burton made any of the allegedly defamatory statements while present in California, or that these statements were based on California sources or directed to a California-based audience. Plaintiffs themselves are not citizens of California, nor do they allege they were injured in California. (*See* Compl. ¶¶ 14–15 (alleging Plaintiffs are both organized under the laws of Switzerland and have their principal places of business in Switzerland).)

Plaintiffs allege that Burton "routinely travels to California for cybersecurity conferences," (Compl. ¶ 20), but do not allege that any of the Challenged Statements were made at such a conference. Nor could such travel be enough to show that Burton is "essentially at home" in California. *See Goodyear*, 564 U.S. at 919 (citations omitted). In any event, Burton's travel to California is far from "routine." She has traveled to California no more than four times in each of the last two years. (Burton Decl. ¶¶ 7, 8.) Plaintiffs' conclusory allegation that Burton "authored the defamatory statements . . . in coordination with colleagues who, on information and belief, reside in California" is similarly useless (and inaccurate). The team of over 20 employees Burton leads is located almost entirely outside of California. (Burton Decl. ¶ 6.) And, even if Burton did make the Challenged Statements "in coordination with colleagues" who happened to be located in California, haling someone into court based on such an attenuated connection would offend all notions of fair play and substantial justice. *See Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th at 1163 (affirming dismissal for lack of personal jurisdiction where plaintiffs failed to allege that defendant injured

them in the forum state, noting that "haling [defendant] into court in [forum state] for a harm that was suffered elsewhere does not satisfy due process," and that "lack of forum-state harm is dispositive").

Plaintiffs' allegations concerning personal jurisdiction boil down to the fact that Defendant Burton happens to be employed by a California-based company.  But courts routinely dismiss actions for lack of personal jurisdiction where the connections between the defendant and forum state are significantly *more* extensive than the paltry connections present here — for example, where harm was suffered in the forum state (which is not alleged here).  *See, e.g., Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 948 (N.D. Cal. 2014) (dismissing claims against non-resident individual employee defendants for lack of personal jurisdiction, even where plaintiff's injury took place in California); *Sussman v. Playa Grande Resort, S.A. DE C.V*, 839 F. App'x 166, 167 (9th Cir. 2021) (dismissing claim for lack of personal jurisdiction where only link between defendant's challenged letter and California is that the letter discussed California-based plaintiff); *Davis v. Metro Prods., Inc.*, 885 F.2d 515, 520 (9th Cir. 1989) ("[A] person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert jurisdiction over the person." (citing cases)).  Defendant Burton has not "purposefully directed" any activities at residents of California, let alone activities that gave rise to the purported injuries at issue in this litigation.  The Complaint should be dismissed as to Burton for lack of personal jurisdiction.

**B.      The Anti-SLAPP Statute Applies to Plaintiffs' Claims.**

**1.      California's Anti-SLAPP Statute Applies in Federal Court.**

The Ninth Circuit has made clear that California's anti-SLAPP statute, California Code of Civil Procedure § 425.16 ("Section 425.16"), applies in federal diversity to state law claims because the statute was "crafted to serve an interest not directly served by the Federal Rules: the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'"  *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (citation omitted).  Defendants can therefore move to strike, pursuant to Section 425.16 and California case law interpreting its application, Plaintiffs' state law claims asserted in this Court.  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021); *Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1010 (C.D. Cal. 2002).

### 2.    The Anti-SLAPP Statute Is Construed Broadly.

Section 425.16 "was enacted to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001).  Courts, "whenever possible, should interpret the First Amendment and section 425.16 in a manner 'favorable to the exercise of freedom of speech, not its curtailment.'" *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1119 (1999) (citation omitted); C.C.P. § 425.16(a) (Legislature directs the anti-SLAPP law "shall be construed broadly").  The law creates a "two-step process for determining" whether a cause of action should be stricken under Section 425.16.  *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (citations and quotations omitted); Cal. Civ. Proc. Code § 425.16(b)(1).

In the first step, the court decides whether the defendant has made a threshold showing that "the plaintiff's suit arises from an act both (a) in furtherance of the defendant's constitutional right to free speech, *and* (b) in connection with a public issue[.]" *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d 1012, 1023 (C.D. Cal. 2022) (emphasis in original) (quotations omitted) (citing *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) and *Hilton v. Hallmark Cards*, 599 F.3d 894, 903–08 (9th Cir. 2010)). This prong is satisfied if relief is sought based on allegations arising from activity protected under any one of the four categories enumerated in Section 425.16(e).[2] *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1036 (2008).

If the first step is satisfied, "the burden then shifts to the plaintiff to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Herring Networks, Inc.*, 8 F.4th at 1155 (cleaned up).  "The district court must grant the defendant's motion and dismiss the complaint if the plaintiff presents an insufficient legal basis for the claims or no reasonable jury could find for the plaintiff."  *Id.* (quotations and citations omitted).  Where, as here, the anti-SLAPP law motion "asserts only legal deficiencies" in the complaint, "a court is to conduct its analysis under a Rule 12(b)(6)

---

[2] As applicable in this case, an act in furtherance of a person's right of free speech includes: "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Section 425.16 (e)(3)-(4).

standard." *Eliott v. Lions Gate Ent. Corp.*, 639 F. Supp. 3d at 1023; *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (when anti-SLAPP motion in federal court "identifies legal defects on the face of the pleading," the motion is "analogous to a Rule 12(b)(6) motion to dismiss"); *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (same). Thus, in applying Section 425.16, "a claim is considered legally sufficient when the allegations, viewed in light most favorable to the [p]laintiff, are 'plausible on [their] face.'" *Heller v. NBC Universal, Inc., No.* CV-15-09631-MWF-KS, 2016 WL 6583048, at *3 (C.D. Cal. June 29, 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### 3. The Challenged Speech Implicates an Issue of Public Interest.

Analysis of the first prong is focused "not on the form of plaintiff's cause of action, but, rather, the defendant's *activity* that gives rise to his or her asserted liability — and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten,* 29 Cal. 4th 82, 92 (2002) (emphasis in original) (applying anti-SLAPP law to breach of contract claim). "In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Id.* at 89 (emphasis in original) (citations omitted); *Hunter v. CBS Broad., Inc.* 221 Cal. App. 4th 1510, 1520 (2013) ("In assessing whether a cause of action arises from protected activity, we disregard the labeling of the claim and instead examine the principal thrust or gravamen of a plaintiff's cause of action. . . . We assess the principal thrust by identifying [t]he allegedly wrongful and injury-producing conduct . . . that provides the foundation of the claim." (emphases omitted, citation and quotations omitted)). Here, Counts 1–5 are premised on the content of Defendants' statements in public blog posts and at industry conferences. (*See* Compl. ¶¶ 130–35, 144, 152, 159, 167.) Each one of these claims therefore falls squarely within the scope of protection afforded by Sections 425.16(e)(3) and (4).

Within the anti-SLAPP statute, "*any issue in which the public is interested*" is "an issue of public interest." *Nygård, Inc.*, 159 Cal. App. 4th at 1042 (internal quotations omitted, emphasis in original). There can be little doubt that Infoblox's speech disputed by Plaintiffs — the results of Defendants' extensive research into cybersecurity threat actors that exposed malicious advertising campaigns and practices — goes to the heart of an important public issue. By reporting threat intelligence information

that warned of compromised website platforms and malware sources, these publications protected users in the global online advertising space, thereby illuminating matters that "affect[ed] large numbers of people beyond the direct participants." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 898 (2004). In short, speech aimed at combating operations that threaten the integrity of the cyberspace adtech industry falls squarely within the ambit of the anti-SLAPP law's protection. *See Doe v. Gangland Prods., Inc*., 730 F.3d 946, 951 (9th Cir. 2013) (documentary about "some of America's most notorious gangs and the efforts of law enforcement working to stop them" was matter of public interest (quotations omitted)).

The circumstances in which Infoblox reported on the opaque network affiliations of threat actors that haunt the internet and have operated to the financial detriment of victims worldwide demonstrate that Defendants' speech "is a paradigmatic example of 'conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest.'" *Geiser v. Kuhns*, 13 Cal.5th 1238, 1255 (2022) (quoting § 425.16(e)(4)). The "functional relationship [ ] between the speech and the public conversation about [a] matter of public interest" could hardly be more clear or direct in this case. *FilmOn.com Inc. v. DoubleVerify Inc*. 7 Cal.5th 133, 149-50 (2019). Indeed, *all* of the Complaint's causes of action arise from that very relationship.

Because Defendants easily satisfy step one of the anti-SLAPP law analysis, the burden shifts to Plaintiffs to demonstrate "a probability of prevailing on the merits of each of [their] clams." *Gangland*, 730 F.3d at 953 (citations and quotations omitted). As explained below, Plaintiffs cannot satisfy this burden.

## C.     The Complaint Fails to State a Claim for Defamation.

### 1.     The Vast Majority of the Challenged Statements Are Not "Of and Concerning" Skyforge or Teknology.

"In defamation actions[,] the First Amendment . . . requires that the statement on which the claim is based must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "In California, whether statements can be reasonably interpreted as referring to [the] plaintiff[] is a question of law for the court." *SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008) (citation omitted).

The "of and concerning" element is not merely a matter of common law; it is constitutionally mandated. *N.Y. Times Co. v. Sullivan*, 376 U.S. at 288–92 (explaining that because defamation suits threaten the freedom of speech and press protected by the First Amendment, the "of and concerning" requirement takes on particular constitutional significance). Given the "unjustifiable threat to society" posed by "allow[ing] a plaintiff who is not identified, either expressly or by clear implication, to institute [a defamation action]," the "of and concerning" requirement acts as a critical limitation, ensuring that a right of action for defamation is granted only "to those who are the direct object of criticism and [not] to those who merely complain of nonspecific statements that they believe cause them some hurt." *Blatty*, 42 Cal. 3d at 1044.

"In order to satisfy [the 'of and concerning'] requirement, the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication." *Id.* at 1046 (citations omitted). Acknowledging the "of and concerning" element's constitutional underpinnings, California law requires that an alleged "defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, ***but also must be shown actually to have been so understood by a third party***." *SDV/ACCI*, 522 F.3d at 959 (emphasis added) (citations omitted); *De Witt v. Wright*, 57 Cal. 576, 578 (1881) ("[I]t is essential not only that it should have been written concerning the plaintiff, but also that it was *so understood* by at least [ ] one third person." (emphasis in original) (citations omitted)). The "of and concerning" element thus places a heavy burden on defamation plaintiffs, even at the pleading stage and particularly where, as here, the statements complained of do not identify the Plaintiffs. Thus, to survive a motion to dismiss where the statement complained of does not identify the plaintiff by name, California law requires that the complaint allege that a reader *actually* understood the statement as referring to the plaintiff — not just that a reasonable reader could so understand the statement. *Baffert v. Wunderler*, No. 23-cv-1774-RSH-BLM, 2024 WL 5237441, at *9 (S.D. Cal. Aug. 27, 2004) (dismissing defamation claims where plaintiffs "fail[ed] to plead facts that would plausibly support the conclusion that a third party reasonably understand that post—or any other post at issue here—to refer to [plaintiff]" (citations omitted)); *Mahoney v. Meta Platforms, Inc.*, 710 F. Supp. 3d 771, 779 (N.D. Cal. 2024) (granting motion to dismiss where plaintiff failed to establish statements "specifically

referred to her or was understood by any third party as referring to her"). With respect to nearly all of the statements at issue, Plaintiffs have come nowhere close to satisfying this strict pleading requirement.

Here, other than 3 statements (Compl. ¶¶ 91(iii), 95(ii), 95(vi)), none of the remaining 32 Challenged Statements identify Teknology or Skyforge (*see* Compl. ¶¶ 87, 91, 95, 98, 100, 118). Rather, those statements reference:

- **one or some combination of the Platforms** (Compl. ¶¶ 87(i), 87(ii), 87(iii), 91(vii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), 118(iv));

- **VexTrio** (Compl. ¶¶ 87(i), 87(ii), 87(iii), 91(v), 95(iv),95(viii), 95(x), 95(xi), 98(i), 98(ii), 98(v), 100(i), 100(ii), 100(iii), 100(iv));

- **owners, co-founders, and/or affiliates of the Platforms or Plaintiffs** (Compl. ¶¶ 91(ii), 91(iv), 91(viii), 95(i), 95(iii), 95(x));

- **entities not alleged to have any connection with Plaintiffs** (Compl. ¶¶ 95(v), 100(ii), 100(iii)); and/or

- **unidentified "malicious adtech" or "adtech companies"** (Compl. ¶¶ 91(i),[3] 91(vi),[4] 95(x), 98(iii), 98(iv), 100(iii)).

Even if such statements could reasonably be understood to implicitly refer to Plaintiffs — a dubious proposition given that the sparse references to Skyforge or Teknology in the Publications are ambiguous, at best — the Complaint fails to allege that a third party reader actually understood any of those statements to refer to Plaintiffs. Accordingly, Plaintiffs have failed, as a matter of law, to plead that these 32 Challenged Statements are "of and concerning" Plaintiffs.

Allegations that Skyforge currently, or at some point in the past, "operated" the Platforms (Compl. ¶¶ 23–26) — whatever that means — do not alchemize statements identifying Los Pollos, Taco Loco, and/or Adtrafico into statements concerning Skyforge or Teknology.[5] Again, Plaintiffs are required under

---

[3] Although the Complaint asserts that Defendant Burton "[c]haracterized her presentation about Sky/Tek as 'a journey into the work of malicious adtech,'" the presentation materials reveal that the presentation was not "about Sky/Tek." (*See generally* Compl. Ex. 3.)

[4] Although the Complaint alleges that Defendant Burton "[a]ccused Skyforge of creating fake mobile-device applications" during the Black Hat 2025 presentation, the presentation slide cited in support of such allegation does not mention Skyforge. (Compl. Ex. 3 at 37.)

[5] Notably in this regard, while the Complaint itself fails to specify the relationship between the Platforms and Plaintiffs, a pre-litigation letter sent by Plaintiffs' counsel to Infoblox, which is attached as Exhibit 7 to the Complaint, states that Skyforge is a "holding company" whose "subsidiaries" "operate several platforms that are discussed at length in Infoblox's marketing materials." (Compl. Ex. 7 at Appendix p. 1.) Thus, to the

14

California law to further allege that a reader actually understood statements about the Platforms to refer to one of the Plaintiffs in order to satisfy the "of and concerning" element.  *Bielma v. Bostic*, No. 15CV1606-MMA (BLM), 2016 WL 29624, at *19 (S.D. Cal. Jan. 4, 2016) (granting motion to dismiss where plaintiffs did not allege third party actually understood allegedly defamatory statements "as referring to them").  No such allegation is contained in the Complaint.

Compounding this deficiency, statements concerning the Platforms' owners, co-founders, or affiliates are not "of and concerning" either the Platform or the Plaintiffs as a matter of law.  (Compl. ¶¶ 91(ii), 91(iv), 91(viii), 95(i), 95(iii), 95(x).)  The same is true of the Challenged Statement alleged at Paragraph 95(vi), which concerns itself not with Teknology itself but, rather, "Swiss networks *associated to* the firm Tekonology[.]"  (Compl. ¶ 95 (vi) (emphasis supplied).)  It is hornbook law that "a statement about a person is only 'of and concerning' that person, not friends, relatives, or associates."  Robert D. Sack, SACK ON DEFAMATION, § 2:9.5, at 2-192 (5th ed. 2017).  *See also GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 n.11 (2013) (holding chief executive officer failed to meet his burden to show that his defamation claim had minimal merit where a press release and social media post referred to the plaintiff corporation but not the CEO plaintiff); *Church of Scientology v. Flynn*, 578 F. Supp. 266, 268 (D. Mass 1984) (holding that a statement about individual "Scientologists" and "someone like a Scientologist" was not "of and concerning" plaintiff Church of Scientology of California)).  As the Second Circuit has put it, "[w]e know of no principle of defamation law that permits someone to recover for a defamation of another solely because the communication contains an allegedly false implication that the person bringing suit is at risk of loss."  *Kirch v. Liberty Mutual Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (citing *AIDS Counseling & Testing Ctrs. v. Group W Tel., Inc.*, 903 F.2d 1000, 1005 (4th Cir. 1990); *McBride v. Crowell-Collier Publ'g Co.*, 196 F.2d 187, 189 (5th Cir. 1952); *Cardone v. Empire Blue*

---

extent Plaintiffs' theory is that references to the Platforms are somehow implicit references to the Platforms' "operators," such theory is not only inadequately pleaded for the reasons discussed above, but appears to be asserted on behalf of the wrong corporate entity.  *Sovereign Asset Mgmt. v. Health Net Life Ins. Co.*, No. CV189360FMODFMX, 2019 WL 4640397, at *4 (C.D. Cal. Sept. 10, 2019) ("[A] corporation usually does not have standing to enforce the rights of its subsidiaries, and where the harmful conduct alleged is directed at the subsidiary and not the parent, the parent has no standing to bring a claim." (quotations and citations omitted)).

*Cross & Blue Shield*, 884 F. Supp. 838, 847 (S.D.N.Y. 1995); *Afftrex, Ltd. v. Gen. Elec. Co.*, 555 N.Y.S.2d 903, 905 (3d Dep't 1990)).

In a similar vein, statements about VexTrio cannot be deemed "of and concerning" Plaintiffs as a matter of law. As alleged in the Complaint, VexTrio is the name Defendants have given to an alleged "criminal enterprise" that "includes nearly a hundred companies and brands." (Compl. ¶ 59(vi).) Notably, "the dividing line between what is and isn't VexTrio is complicated[.]" (*Id.* ¶ 59(viii).) Where, as here, a defamation claim is premised on statements about a group, "and one or more members of that group bring a libel or slander action, thorny questions are presented as to whether the communication is 'of and concerning' the plaintiff or plaintiffs." Robert D. Sack, SACK ON DEFAMATION, § 2:9.4, at 2-183 (5th ed. 2017). Recognizing that the likelihood a reader will understand the statement to refer to any particular member of a group diminishes as the size of the group increases, California courts have developed a bright-line rule to assess the "of and concerning" element with respect to claims of group libel: a statement directed at a group, as opposed to a named individual, may be actionable, but only if the group is small and its members easily ascertainable. *Blatty*, 42 Cal. 3d at 1046 (emphasis added). In contrast, a group exceeding twenty-five members is considered too large to satisfy the "of and concerning requirement" as a matter of law. *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1153 (N.D. Cal. 1983) (citations omitted), *aff'd* 732 F.2d 163 (9th Cir. 1984). Applying this rule here, Plaintiffs are unable, as a matter of law, to establish that statements about VexTrio are of and concerning them because, as alleged, membership in the group both exceeds the twenty-five member threshold and is not easily ascertainable.

### 2. The Complaint Fails Sufficiently to Plead That Any of the Challenged Statements Are False.

In applying the *Twombly-Iqbal* pleading standards, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider an allegedly defamatory statement false. *See Price v. Stossel*, 620 F.3d 992, 1000, 1003 (9th Cir. 2010). To survive a motion to dismiss, a defamation plaintiff must do more than "perfunctorily state that a statement is false; rather, [the plaintiff] must identify *how* the defendant's statement was false." *Cabello-Rondón v. Dow Jones & Co., Inc.*, No. 16-CV-3346 (KBF), 2017 WL 3531551, at *6 (S.D.N.Y. Aug. 16, 2017) (emphasis supplied) (citation and quotations omitted), *aff'd*, 720 Fed. App'x 87 (2d Cir. 2018); *Cook v. UPS Cartage Servs.*, No.

16

2:18-cv-01182-MCE-KJN, 2018 WL 5013669, *2 (E.D. Cal. Oct. 15, 2018) (describing defendant's motion to dismiss as "well taken because Plaintiff's allegations regarding falsity are entirely conclusory. Although [plaintiff alleged] she was terminated for 'cause' and for 'fraud,' she includes no facts that support her conclusory allegations that those statements are false."); *Kamath v. Itria Ventures, LLC*, No. 23-CV-05153-SVK, 2024 WL 590603, at *6 (N.D. Cal. Feb. 13, 2024) (dismissing defamation claim where plaintiff failed to "explain why [the challenged statement] was untrue and instead offers only a conclusory assertion of falsity").

Here, rather than even minimally explain what makes any of the 35 Challenged Statements false, Plaintiffs merely list the Challenged Statements prefaced by wholly conclusory claims that the statements are "false and defamatory." (Compl. ¶ 87 ("The June 12, 2025 blog post contained at least the following false and defamatory statements."); *id.* ¶ 91 ("Burton made numerous false and defamatory statements. Specifically, at a minimum, Burton: [lists statements]."); *id.* ¶ 95 ("The August 6, 2025 blog post contained, at a minimum, the following false and defamatory statements: . . . ."); *id.* ¶ 98 ("Burton made, at a minimum, the following false and defamatory statements: . . . ."); *id.* ¶ 100 ("The August 12, 2025 blog post contained, at a minimum, the following false and defamatory statements: . . . ."); *id.* ¶ 118 ("The Infoblox employees made at this presentation, at a minimum, the following false and defamatory statements: . . . .").) As federal district courts have made clear, however, "conclusory language" characterizing "the following [as] materially false statement[s] of fact," without an "expla[nation] [of] what is actually contradicted or false about the challenged statements," is insufficient to allege falsity. *1st Amendment Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *15 (S.D.N.Y. Mar. 28, 2025) (citing *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017)). To be sure, such "[t]hreadbare recitals of [a single] element[] of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Contrary to Plaintiffs' suggestion, the allegations contained in paragraphs 22 through 41 of their Complaint also fail to plead the falsity of the Challenged Statements. (*See* Compl. ¶ 137 ("These statements are false, as set forth above, including in paragraphs 22-41.").) Those paragraphs address Plaintiffs'

self-description that "Sky/Tek are lawfully organized businesses operating successfully and lawfully in the advertising-technology sector." (Compl. at 4.) Whatever Plaintiffs believe these allegations support, they do nothing to explain how or why the specific Challenged Statements — none of which accuse Plaintiffs of being unlawfully structured — are false. A complaint that fails to "challeng[e] the accuracy of the statement" at issue, *Cabello- Rondón*, 2017 WL 3531551, at *7, or to provide any "factual support for its conclusion that these statements are, in fact, false," *Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, 2011 WL 1326863, at *6 (M.D. Fla. Apr. 6, 2011) (citation omitted), must be dismissed. If anything, Plaintiffs' myopic focus on their own purported legitimacy, coupled with their failure to provide *any* factual support for the falsity of the specific Challenged Statements, suggests that Plaintiffs are attempting to assert a defamation claim while carefully avoiding alleging the falsity of the Challenged Statements themselves. Plaintiffs' efforts in this regard are not only curious but require dismissal of their defamation claim for failure to allege the falsity of the specific statements complained of.

### 3. Several of the Challenged Statements Fail to Convey a Defamatory Meaning.

To survive a motion to dismiss, a defamation plaintiff must establish that the statements at issue "are 'reasonably capable of sustaining a defamatory meaning.'" *Knievel v. ESPN*, 393 F.3d 1068, 1073–74 (9th Cir. 2005) (quoting *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1121 (C.D. Cal. 1998), *aff'd and reasoning adopted*, 210 F.3d 1036 (9th Cir. 2000)). "It is for the court to decide [whether a statement conveys a defamatory meaning] in the first instance as a matter of law." *Id.* at 1074 (quoting *Dworkin v. Hustler Magazine, Inc.*, 668 F. Supp. 1408, 1415 (C.D. Cal. 1987), *aff'd*, 867 F.2d 1188 (9th Cir. 1989)). To evaluate whether a statement is reasonably capable of sustaining a defamatory meaning, courts must interpret the statement at issue "from the standpoint of the average reader, judging the statement not in isolation, but within the context in which it is made." *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993) (citations omitted). Here, many of the Challenged Statements are not actionable for the independent reason that they convey no defamatory meaning as a matter of law.

For example, although Plaintiffs claim that materials presented at the 2025 Black Hat cybersecurity conference "identified . . . Teknology itself, as part of the so-called VexTrio" (Compl. ¶ 91(iii)), a review of those materials reveals nothing of the sort. Rather than "identify" Teknology as "part of the so-called

VexTrio," as Plaintiffs allege, the presentation in fact merely lists Teknology and other entities under the header "Passive DNS Ties." (Compl., Ex. 3 at 24.) Plaintiffs make no attempt to explain what a "passive DNS tie" is or how being identified as such could reasonably be understood as defamatory. Similarly, although the figure included at Paragraph 95(ii) of the Complaint references "Teknology SA" and "Skyforge SA" among over two dozen other entities, the figure's caption includes the express disclaimer that "not all named businesses are currently operating and some listed individuals may not be involved in the core VexTrio business." (Compl. ¶ 95(ii).) To the extent Plaintiffs are suggesting that statements claiming participation in VexTrio are defamatory, the statements identified at Paragraphs 91(iii) and 95(ii) do not so claim. (*Id.*)

Additionally, it is well-understood that to be defamatory, the statement in question "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous or ridiculous." *Weyrich v. New Republic*, 235 F.3d 617, 627 (D.C. Cir. 2001) (citation and quotations omitted). Applying this principle here, it is not defamatory to state that someone "tries to balance a professional appearance with an adrenaline filled lifestyle" (Compl. ¶ 95(iii)), nor is it defamatory to state that a Platform "claims to process over 1 million requests per second, and is used for push monetization" (Compl. ¶ 95(iv)). It is likewise not defamatory for an entity to unveil "a new way for publishing affiliates to monetize their traffic" or to incentivize others to use such tools. (Compl. ¶ 95(viii).)

### 4. Certain of the Challenged Statements Are Constitutionally Protected Statements of Opinion.

According to longstanding constitutional principles, only statements that are demonstrably false are actionable in defamation. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas."). The same is true of figurative or hyperbolic language. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21 (1990) ("loose, figurative, or hyperbolic language" negates finding that author is making statement of fact). Certain of the Challenged Statements are constitutionally protected expressions of opinion, not potentially actionable false assertions of fact. For example, describing certain services or landing pages as "scams"

1  (Compl. ¶ 95(vi)) is the stuff of opinion signaled by rhetorical hyperbole. *Daniel v. City of Glendale*, No.

2  CV 14-3864 VAP (AJW), 2015 WL 5448562, at *9 (C.D. Cal. Mar. 19, 2015) (noting that use of word

3  "***scam***" expresses an individual's subjective opinion) (emphasis supplied) (citations omitted), *report and*

4  *recommendation accepted*, 2015 WL 5448648 (C.D. Cal. Apr. 9, 2015); *ComputerXpress, Inc. v. Jackson*,

5  93 Cal. App. 4th 993 (2001) (holding that defendants' online statements referring to plaintiff as a "***stock***

6  ***scam***" were protected non-actionable opinion: "[W]hile the postings certainly could be considered

7  disparaging, their tone and content identified them as statements of opinion and not fact . . . they were

8  hyperbolic, informal, and lacked the characteristics of typical fact-based documents") (emphasis supplied).

9  Further, when read in context, several of the Challenged Statements do not amount to factual

10  assertions of criminality but, rather, express an inherently subjective opinion that, as such, is not actionable.

11  *See Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1104 (N.D. Cal. 1999) (held, in context of online heated

12  debate, statements accusing plaintiff of being a "fraud," a "criminal" and acting "illegally" were

13  non-actionable opinion). *See, e.g.*, Compl. ¶ 91(i) ("Characterized [Defendant Burton's] presentation about

14  Sky/Tek as 'a journey into the world of malicious adtech.'"); *id.* ¶ 91(v) ("Stated that VexTrio, and

15  therefore Sky/Tek, was 'affiliated with bad guys,' 'has strong financial relationships with website hackers,'

16  and 'is intertwined with other notorious TDS,' before quipping, 'have you or your loved ones been affected

17  by one of these scams? It was VexTrio.'"); *id.* ¶ 98(iii) ("Burton was asked whether she was surprised that

18  seemingly 'legitimate companies' were 'engaged in this type of activity,' and she responded: 'Yes, very

19  much so . . . I feel like we are walking on ice . . . and you're like 'okay, crime, I'm here on crime.' And

20  then I put my foot out and I'm like 'is that crime?' Not sure! And then we see some scanned image from

21  2000 and we're like 'Oh, yeah, crime!' . . . It's hard to see the boundary between where legitimate and gray

22  and black industries work.'").

23      **D.    The Complaint Fails to State a Claim for False Light.**

24  California law is clear that Skyforge and Teknology — as corporate entities — cannot assert a false

25  light claim as a matter of law. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1107 (N.D.

26  Cal. 2011) ("[A] false light claim may be maintained only by individuals. False light implicates an invasion

27  of privacy, which at common law in California is a right reserved exclusively for actual persons" (citations

28

omitted)); *Kennedy Funding, Inc. v. Chapman*, No. C 09-01957 RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) (dismissing false light claim because "a corporation . . . is not susceptible to the injured 'feelings' associated with invasion of privacy torts" and therefore "cannot state a claim for false light" (citations omitted)).  The Complaint's false light claim should therefore be rejected out of hand.

### E.    The Complaint Fails to State a Claim for Interference with Contract.

Among their potpourri of claims, Plaintiffs allege injury to existing contractual relationships as a result of the Challenged Statements. (Compl. ¶¶ 152–54.)   Because the alleged injury stems from constitutionally protected speech, this Court must first ensure that the First Amendment's requirements have been met before allowing the claim to proceed.  As the Ninth Circuit has explained, when ancillary tort claims are brought as a result of constitutionally protected speech, they are "subject to the same First Amendment requirements that govern actions for defamation."  *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (citations omitted); *see also Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 973 (3rd Cir. 1985) (unless defendants "can be found liable for defamation, the intentional interference with contractual relations count is not actionable").  Indeed, as the California Supreme Court has held, the limitations of the First Amendment "must be broadly applicable whenever the gravamen of the claim is injurious falsehood."  *Blatty*, 42 Cal 3d at 1045.  The reason for this is straightforward:  "a plaintiff may not avoid the protection afforded by the Constitution . . . merely by the use of creative pleading."  *See Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655,* 39 F.3d 191, 196 (11th Cir. 1995) (noting that the constitutional requirements for defamation "must be equally met for a tortious interference claim based on the same conduct or statements").  Here, because Plaintiffs cannot satisfy the constitutional requirements for defamation as a matter of law, as detailed *supra*, their interference with contract claim must also be dismissed.

Plaintiffs' failures to identify each of the "numerous" third parties with whom they purportedly contract or to allege the "nature and extent of" any such contractual relationship provide additional grounds to dismiss their interference claim.  *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015) (holding that to plead an interference with existing contract claim, Plaintiffs "must identify the third party or parties with whom they contracted, and the nature and extent of their relationship

with that party or parties.").  (*See* Compl. ¶¶ 151–54 (merely alleging that Skyforge — not Teknology — "has existing contractual relationships with numerous third-party business partners, affiliates, and service providers . . . includ[ing] but not limited to Hetzner, Credit Suisse, USB, and Corner Bank S.A."); *id.* at ¶ 67 (alleging only that "Defendants' malicious contact with Hetzner, a web-hosting company based in Germany, caused Hetzner to cancel its contract with Sky/Tek because Sky/Tek IP addresses had been reported for potential infrastructure abuse in relation to the campaign by Defendants and Qurium" without alleging the nature and extent of Plaintiffs' alleged contractual relationship with Hetzner).)  This pleading failure requires dismissal because "to understand whether [Plaintiffs'] performance was disrupted require[s] the district court to determine what contractual rights [Plaintiffs] possessed."  *United Nat'l Maint., Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014).

### F.    The Complaint Fails to State a Claim Under the Lanham Act.

The Complaint also fails to state a claim for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  (Compl. ¶¶ 158–64)  "To assert a false advertising claim under the Lanham Act, a plaintiff must allege: (1) a false statement of fact in a commercial advertisement about its own or another's product that (2) actually deceived or tended to deceive a substantial segment of its audience, (3) was material to purchasing decisions, (4) entered interstate commerce, and (5) injured or is likely to injure the plaintiff, either by direct diversion of sales from it to the defendant or by a lessening of the goodwill associated with its products."  *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1031 (N.D. Cal. 2023) (Pitts, J.) (citing *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)).  Plaintiffs' conclusory allegations merely parroting the claim's elements fall far short of their pleading burden under Rule 12(b)(6).  *See Crittendon v. Muldrow*, No. 22-CV-09153-RS, 2023 WL 2743582, at *3 (N.D. Cal. Mar. 31, 2023) (citation omitted).  Even assuming Plaintiffs adequately alleged the remaining elements of their Lanham Act claim — and they do not — Plaintiffs' claim fails at the very first step of the analysis:  pleading that Defendants made a false statement of fact about Plaintiffs' products in the course of commercial advertising.  Plaintiffs make the sweeping allegation that over two dozen statements recited in the Complaint "falsely portrayed Sky/Tek's legitimate business operations as criminal or fraudulent."  (Compl. ¶ 158.)  But, as discussed in Point IV.C.2. above, Plaintiffs fail to sufficiently

plead that *any* of the Challenged Statements are false.  And Plaintiffs make no attempt to allege that the Challenged Statements are "literally true but likely to mislead or confuse consumers." *Automated Pet Care Prods.*, 703 F. Supp. 3d at 1031 (citation and quotations omitted).  They therefore have not pleaded any false statement of fact as required for a Lanham Act false advertising claim.  This defect alone warrants dismissal.  *See AccuImage Diagnostics Corp v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948–49 (N.D. Cal. 2003) (dismissing Lanham Act claim where complaint failed adequately to plead allegedly false statements and the "rest of the false advertising allegations in the complaint simply mimic[ked] the elements of the cause of action and do not plead sufficient facts").

Plaintiffs also fail to allege how the Challenged Statements — made in the context of technical presentations at industry conferences and highly technical reporting published on Infoblox's websites — constitute "commercial advertising or promotion" within the meaning of the Lanham Act, or how the Challenged Statements (most of which are not even about Plaintiffs, as discussed above) actually concern Plaintiffs' "goods, services, or commercial activities." *See* 15 U.S.C. § 1125(a)(1)(B); *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 934–37 (N.D. Cal. 2021) (dismissing Lanham Act claim where challenged statements "are not 'commercial advertising or promotion'" (citations omitted)), *aff'd sub nom. Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2846 (2025).  The Complaint's Lanham Act claim should be dismissed.

## G.  The Complaint Fails to State a Claim for Civil Conspiracy.

Finally, Plaintiffs fail to state a claim for civil conspiracy.  (Compl. ¶¶ 165–69.)  Civil conspiracy is not a standalone cause of action in California; it is a legal doctrine by which a defendant may be held vicariously liable for the conduct of another through an agreement to engage in some wrongful conduct.  *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994).  For this reason alone, the Complaint's conspiracy claim should be dismissed.  *See Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1016 (N.D. Cal. 2024) (dismissing civil conspiracy claim on the grounds that civil conspiracy is not a standalone cause of action (citation omitted)).

1

## V.    **CONCLUSION**

For these reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and award Defendants their reasonable attorneys' fees and costs pursuant to the Anti-SLAPP Law.

Dated: January 9, 2026                                GREENBERG TRAURIG, LLP

By:    */s/ Alex Linhardt*
Michael J. Grygiel (*pro hac vice*)
*grygielm@gtlaw.com*
Kelly L. McNamee (*pro hac vice*)
*mcnameek@gtlaw.com*
Christina N. Hernsdorf (SBN 330987)
*Christina.Hernsdorf@gtlaw.com*
54 State Street, 6th Floor
Albany, New York 12207
Tel.: 518-689-1400

Alex Linhardt (SBN 303669)
GREENBERG TRAURIG, LLP
*linhardta@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, California 90067-2121
Tel.: 310-586-7700; Fax: 310-586-7800

*Attorneys for Defendants Infoblox Inc. and Renée Burton*