**GREENBERG TRAURIG, LLP**
Alex Linhardt (SBN 303669)
*linhardta@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Tel.: 310-586-7700; Fax: 310-586-7800

**GREENBERG TRAURIG, LLP**
Michael J. Grygiel (*pro hac vice*)
*grygielm@gtlaw.com*
Kelly L. McNamee (*pro hac vice*)
*mcnameek@gtlaw.com*
Christina N. Hernsdorf (SBN 330987)
*Christina.Hernsdorf@gtlaw.com*
54 State Street, 6th Floor
Albany, NY 12207
Tel.: 518-689-1400

Attorneys for Defendants INFOBLOX INC.
And RENÉE BURTON

**UNITED STATES DISTRICT COURT OF CALIFORNIA**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SKYFORGE DIGITAL AG, a Switzerland corporation, and TEKNOLOGY SA, a Switzerland corporation,

Plaintiffs,

v.

INFOBLOX INC., a Delaware corporation, and RENÉE BURTON, in her individual capacity,

Defendants.

CASE NO. 5:25-cv-09502-PCP

Assigned to Hon. P. Casey Pitts
Magistrate Judge Susan van Keulen
Courtroom 8

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO STRIKE AND MOTION TO DISMISS**

| | |
|---|---|
| Date: | March 26, 2026 |
| Time: | 10:00 a.m. |
| Place: | Courtroom 8 |
| Action Filed: | November 4, 2025 |
| Trial Date: | None Set |

# TABLE OF CONTENTS

**Page**


I. PRELIMINARY STATEMENT ..... 1

II. ARGUMENT ..... 1

A. Plaintiffs Have Failed to Demonstrate That This Court Has Personal Jurisdiction Over Defendant Burton ..... 1

1. This Court Does Not Have Personal Jurisdiction Over Dr. Burton. ..... 2

2. Plaintiffs Fail to Make Any Showing that Discovery Will Reveal Jurisdictionally Relevant Facts. ..... 4

B. The Anti-SLAPP Law Applies to Plaintiffs' Claims. ..... 5

C. The Complaint Fails to State a Claim for Defamation. ..... 6

1. The Vast Majority of the Challenged Statements Are Not "Of and Concerning" Plaintiffs. ..... 6

2. The Complaint Fails to Plead That Any of the Challenged Statements Are False. ..... 8

3. Several of the Challenged Statements Fail to Convey a Defamatory Meaning. ..... 10

4. Certain of the Challenged Statements Are Constitutionally Protected Statements of Opinion. ..... 11

D. The Complaint Fails to State a Claim for False Light. ..... 11

E. The Complaint Fails to State a Claim for Interference with Contract. ..... 12

F. The Complaint Fails to State a Claim Under the Lanham Act. ..... 13

G. The Complaint Fails to State a Claim for Civil Conspiracy. ..... 14

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES


Page(s)

**Federal Cases**

*1st Amendment Praetorian v. N.Y. Times Co.*,
No. 1:23-cv-00012 (MKV), 2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ..........9

*Baffert v. Wunderler*,
No. 23-cv-1774-RSH-BLM, 2024 WL 5237441 (S.D. Cal. Aug. 27, 2024) ..........6

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ..........2

*Calder v. Jones*,
465 U.S. 783 (1984) ..........3

*In re Centerstone Diamonds, Inc.*,
No. 09 BK 23945 PC, 2014 WL 1330186 (Bankr. C.D. Cal. Apr. 3, 2014) ..........13

*Children's Health Defense v. Meta Platforms, Inc.*,
112 F.4th 742 (9th Cir. 2024) ..........14

*Davis v. Cranfield Aerospace Solutions,, Ltd.*,
71 F.4th 1154 (9th Cir. 2023) ..........1, 2, 3

*Foundation for Anime & Niche Subcultures v. Texas Anime Conventions*,
769 F. Supp. 3d 1034 (N.D. Cal. 2025) ..........2

*Herring Networks, Inc. v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ..........11

*Holomaxx Technologies v. Microsoft Corp.*,
783 F. Supp. 2d 1097 (N.D. Cal. 2011) ..........12

*Kamath v. Itria Ventures, LLC*,
No. 23-cv-05153-SVK, 2024 WL 590603 (N.D. Cal. Feb. 13, 2024) ..........14

*Kennedy Funding, Inc. v. Chapman*,
No. C 09-01957 RS, 2010 WL 4509805 (N.D. Cal. Nov. 1, 2010) ..........12

*LNS Enterprises LLC v. Continental Motors, Inc.*,
22 F.4th 852 (9th Cir. 2022) ..........5

*Motekaitis v. USI Insurance Services., LLC*,
No. 24-cv-00885-RS, 2025 WL 711113 (N.D. Cal. Mar. 2, 2025) ..........5

*National Specialty Pharmacy, LLC v. Padhye*,
734 F. Supp. 3d 922 (N.D. Cal. 2024) ..........5

*New.Net, Inc. v. Lavasoft*,
356 F. Supp. 2d 1090 (C.D. Cal. 2004) .......... 14

*Nicosia v. De Rooy*,
72 F. Supp. 2d 1093 (N.D. Cal. 1999) .......... 4

*Peak Health Center v. Dorfman*,
No. 19-cv-04145-VKD, 2019 WL 5893188 (N.D. Cal. Nov. 12, 2019) .......... 14

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) .......... 8

*Prager University v. Google LLC*,
951 F.3d 991 (9th Cir. 2020) .......... 14

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 2

*SDV/ACCI, Inc. v. AT&T Corp.*,
522 F.3d 955 (9th Cir. 2008) .......... 6

*Tripharma, LLC v. First Fruits Business Ministry LLC*,
No. 8:21-cv-01806-JVS(JDEx), 2023 WL 2695476 (C.D. Cal. Feb 15, 2023) .......... 13

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
117 F. Supp. 3d 1092 (C.D. Cal. 2015) .......... 13

*Unelko Corp. v. Rooney*,
912 F.2d 1049 (9th Cir. 1990) .......... 12

**California Cases**

*Aisenson v. American Broadcasting Co.*,
220 Cal. App. 3d 146 (1990) .......... 12

*Baker v. L.A. Herald Examiner*,
42 Cal. 3d 254 (1986) .......... 11

*Blatty v. N.Y. Times Co.*,
42 Cal. 3d 1033 (1986) .......... 8

*Hill v. National Collegiate Athletic Association*,
7 Cal. 4th 1 (1994) .......... 11

*L.A. Memorial Coliseum Commission v. Insomniac, Inc.,*
233 Cal. App.4th 803 (2015) .......... 15

*Smith v. Maldonado*,
72 Cal. App. 4th 637 (1999) .......... 10, 11

**California Statutes**

California Code of Civil Procedure § 425.17(c) ........ 5

**Other Authorities**

Restatement (Second) of Torts ........ 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiffs'[1] opposition to Defendants' motions to strike and dismiss the Complaint (Pls. Resp. to Defs. Mot. to Dismiss and Mot. to Strike, Dkt. No. 48 ("Opposition" or "Opp.")) is littered with distractions immaterial to the issues at hand. The Court need not burden itself with either Plaintiffs' preoccupation with Defendants' seeking dismissal on purely legal grounds or Plaintiffs' consternation over the parties' pre-litigation correspondence. If Plaintiffs had desired to avoid an early dispositive motion without the need for an evidentiary showing, they should have pleaded sufficient facts to state claims that are plausible on their face. They have failed to do so with respect to any of their five causes of action. The Complaint should therefore be dismissed.

The Opposition's arguments as to this Court's basis for personal jurisdiction over Defendant Burton suffer from similar fatal flaws. Plaintiffs do not, as they must, demonstrate a basis under which it would be reasonable for this Court to exercise specific personal jurisdiction over an out-of-state defendant for allegedly committing an out-of-state tort causing out-of-state harm to an out-of-state plaintiff. Plaintiffs instead seek to distract the Court with irrelevant conjecture and questions about Dr. Burton and her Infoblox colleagues that have no bearing on this Court's personal jurisdiction over her. The Complaint should therefore *also* be dismissed in its entirety as to Dr. Burton for lack of personal jurisdiction.

## II. ARGUMENT

### A. Plaintiffs Have Failed to Demonstrate That This Court Has Personal Jurisdiction Over Defendant Burton.

Plaintiffs have much to say about Defendant Burton's real and hypothesized contacts with California. (*See* Opp. at 21–25.) But at the end of the day, Plaintiffs still have not alleged that Dr. Burton caused them any injury in California. This omission is a fatal defect. Plaintiffs themselves are located outside the United States, the injuries Plaintiffs claim to have suffered all took place outside the United States, and Plaintiffs do not allege that Dr. Burton made any of the Challenged Statements from California. Thus, because this "case involves out-of-state conduct by an out-of-state defendant and an out-of-state harm," the district court does not have personal jurisdiction over Dr. Burton. *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1166 (9th Cir. 2023)

[1] Capitalized terms not otherwise defined herein shall have the same meaning as set forth in Defendants' opening brief and in Defendants' motion to stay discovery. (Defs. Mot. to Dismiss and Mot. to Strike, Dkt. No. 39 ("Motion to Dismiss" or "MTD"); Defs. Mot. to Stay Discovery, Dkt. No. 47.)

("*Davis*"). Plaintiffs do not cite a single case in which a court exercised specific jurisdiction over an out-of-state defendant for a tort claim brought by an out-of-state plaintiff alleging it suffered out-of-state injuries. This makes good sense, as exercising personal jurisdiction in such a scenario would offend all "notions of fair play and substantial justice." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004) (quotations omitted); *see also Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 265 (2017) (no personal jurisdiction over out-of-state defendant on due process grounds where "relevant plaintiffs are not California residents and do not claim to have suffered harm in that State").

**1. This Court Does Not Have Personal Jurisdiction Over Dr. Burton.**

As discussed in Defendants' opening brief, a court may exercise specific jurisdiction over a non-resident defendant only where: (1) the defendant has purposefully directed her activities or consummated some transaction with the forum or resident thereof, or performed some act by which she purposefully avails herself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice — *i.e.,* it must be reasonable. *See Davis*, 71 F.4th at 1161–62. (MTD at 7–8.) Plaintiffs do not satisfy any of these.

**Purposeful Direction or Purposeful Availment.** As to the first prong of this test, purposeful direction and purposeful availment are two distinct concepts: courts typically apply the purposeful *direction* test for tort claims such as those presented in this case, and the purposeful *availment* test for claims sounding in contract. *See Found. for Anime & Niche Subcultures v. Tex. Anime Conventions*, 769 F. Supp. 3d 1034, 1039 (N.D. Cal. 2025) (Pitts, J.) (citations omitted). "A showing of purposeful availment 'typically consists of evidence of the defendant's actions in the forum,' whereas a showing of purposeful direction 'usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum state.'" *Id.* (quoting *Schwarzenegger*, 374 F.3d at 802–03). However, "the first prong 'may be satisfied by purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Davis*, 71 F.4th at 1162 (citation omitted).

To show purposeful direction, "the defendant must have allegedly '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* at 1162–63 (quoting *Schwarzenegger*, 374 F.3d at 803). "Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Id.* at 1163 (quoting *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1144 (9th Cir. 2017)). Indeed, "lack of forum-state harm is dispositive" on the purposeful direction

test. *Davis*, 71 F.4th at 1163. Such is the case here. Not only have Plaintiffs failed to allege that Dr. Burton committed any intentional act expressly aimed at California (such as making defamatory statements about a resident of California), they come nowhere near alleging that they suffered any harm there. Moreover, this is not the sort of allegation that jurisdictional discovery could allow Plaintiffs to make: Plaintiffs know whether or not they were harmed in California. Plaintiffs cannot satisfy the purposeful direction test.

Plaintiffs do not address the purposeful direction test, except to claim summarily that it does not apply. (Opp. at 23 n.9.) But even under the purposeful *availment* test (typically applied in contract-based claims, not tort claims, as discussed), Plaintiffs fare no better. The single case Plaintiffs cite in support of their purposeful availment argument, *Swenberg v. dmarcian, Inc.*, involved a California-based plaintiff bringing claims arising directly from his former employment relationship with a California-based company. (Opp. at 23 (citing *Swenberg v. dmarcian, Inc.*, 68 Cal. App. 5th 280, 296–99 (2021)).)[2] There, the plaintiff brought various employment and ownership interest claims against the California company he co-founded, his co-founder, and a Netherlands-based chief executive of the company. 68 Cal. App. 5th at 284–85. Plaintiff alleged that the Dutch defendant committed a tort expressly aimed at plaintiff, a California resident. *Id.* at 295. The court found that it had personal jurisdiction over the Dutch defendant because, "[h]aving established and made economic use of a relationship with a California company and its employees, [the Dutch defendant] could reasonably expect to be subject to the jurisdiction of California courts in litigation *connected to this relationship*." *Id.* at 298 (emphasis supplied). This case is fundamentally different: it does not, for example, arise from an employment dispute between Dr. Burton and Infoblox, in which Dr. Burton's employment relationship with Infoblox could mean that she may "reasonably expect to be subject to the jurisdiction of [a] California court in litigation connected to th[at] relationship." *Id.* Rather, it arises from allegedly defamatory statements Dr. Burton made from outside of California about Plaintiffs who do not reside in California and do not allege they were harmed in California. This is not enough to demonstrate that Dr. Burton purposely availed herself of California for purposes of litigation connected to any statements she allegedly made about Plaintiffs.

---

[2] Plaintiffs also cite *Calder v. Jones*, 465 U.S. 783, 789–90 (1984), in support of their purposeful availment argument. (Opp. at 23.) But *Calder* did not involve the purposeful availment test at all. There, the United States Supreme Court determined whether a California state court could, consistent with due process, exercise personal jurisdiction over Florida-based employees of a national magazine with its largest circulation in the state of California, where the underlying action arose from an "allegedly libelous story concern[ing] the California activities of a California resident," based on interviews with sources located in California. 465 U.S. at 785, 788.

**Claim Arising Out of or Relating to Defendant's Forum-Related Activities.** As to the second prong of the specific personal jurisdiction test, Plaintiffs allege that their "claims arise from Burton's activity in California" because, "[i]f not for Burton's contacts with California—authoring statements to be published on a California company's website—[Plaintiffs] would not have suffered from her tortious conduct." (Opp. at 23 (citing *Nicosia v. De Rooy*, 72 F. Supp. 2d 1093, 1099 (N.D. Cal. 1999)).) Again, Plaintiffs miss the point: their claims arise not from the fact that Dr. Burton is employed by a California company, but from the Challenged Statements they allege she made. And, as discussed, Plaintiffs do not allege Dr. Burton made any of the Challenged Statements in California or targeted a California audience with the Challenged Statements. Thus, Plaintiffs have not demonstrated that their claims arise out of Dr. Burton's forum-related activities. Indeed, as Plaintiffs themselves point out, a defendant's "contacts with California are not to be judged according to their employer's activities there . . . . Each defendant's contacts with the forum State must be assessed individually." (Opp. at 23 (quoting *Calder*, 465 U.S. at 789–90) (quotations omitted).) Judging Dr. Burton's contacts with the forum State individually, then, Plaintiffs' claims do not arise from her activity in California. In contrast, in *Nicosia*, a case on which Plaintiffs rely (*see id.*), the Northern District of California found that a claim arose out of a defendant's contacts with the state where the defendant authored an allegedly defamatory article *about* a California resident, then emailed the article to several individuals in California. *Nicosia*, 72 F. Supp. 2d at 1096, 1099, 1099 n.3. Here, though, no such links exist between the Challenged Statements themselves and Dr. Burton's California contacts. This prong is therefore not satisfied.

**Fair play and substantial justice.** For the reasons set forth above and in Defendants' opening brief, exercising jurisdiction over Dr. Burton under the facts presented in this case would offend all notions of fair play and substantial justice. Indeed, courts routinely dismiss actions for lack of personal jurisdiction where the connections between the defendant and forum state are significantly *more* extensive than the paltry connections present here. (MTD at 9 (citing cases).)

**2. Plaintiffs Fail to Make Any Showing that Discovery Will Reveal Jurisdictionally Relevant Facts.**

Plaintiffs make the conclusory argument that they "should be allowed to conduct jurisdictional discovery" if "the Court has any doubt" about its ability to exercise personal jurisdiction over Dr. Burton. (Opp. at 25.) But they make no effort to demonstrate what jurisdictionally relevant facts they believe discovery would

uncover. Plaintiffs complain that Dr. Burton's "vague, carefully worded declaration raises more questions than answers." (Opp. at 24.) The "questions" Plaintiffs pose, however, are either pure argument (not facts) or facts that would not change the outcome of this Court's personal jurisdiction analysis. As just one example, whether Dr. Burton's California-based team member "is involved in the Complaint's allegations" (whatever that means) has no bearing on this Court's jurisdiction over Dr. Burton herself. *See Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 928 (N.D. Cal. 2024) (allegations that in-state co-defendant "working remotely and electronically from [California] with [out-of-state defendant]" to conduct improper activities were insufficient to establish personal jurisdiction over out-of-state defendant because allegations failed to "identify any specific conduct by [out-of-state defendant] . . . targeted toward California"). (Opp. at 24.) Plaintiffs also claim the "Complaint alleges," and "Burton's declaration leaves open the very real scenario[,] that she worked extensively in California on the VexTrio project, both in-person and remotely, and that she did so with one or more California-based individuals." (*Id.*) It is entirely unclear to Defendants what Plaintiffs mean by "the VexTrio project," or how these sweeping allegations, even if true, would establish this Court's jurisdiction over Dr. Burton as to the Challenged Statements and Plaintiffs' claims against her.

In sum, Plaintiffs' request for jurisdictional discovery, which they seek "without providing any affidavit or evidence substantiating their requests or describing with any precision how such discovery could be helpful to the Court[,]" amounts to no more than a "mere hunch that discovery might yield jurisdictionally relevant facts." *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 865 (9th Cir. 2022) (brackets, citations, and quotations omitted). This is not enough, and Plaintiffs' request for jurisdictional discovery should be denied.

**B. The Anti-SLAPP Law Applies to Plaintiffs' Claims.**

Plaintiffs' contention that the commercial speech exemption, California Code of Civil Procedure § 425.17(c), bars application of the Anti-SLAPP Law to this action amounts to an extended exercise in irrelevancy that need scarcely detain the Court. (Opp. at 4–7.) As the Northern District of California recently explained, the Anti-SLAPP Law's "commercial speech" exemption is restricted to scenarios in which a defendant makes "statements about a business competitor's goods or services to advance the defendant's business." *Motekaitis v. USI Ins. Servs., LLC*, No. 24-cv-00885-RS, 2025 WL 711113, *6 (N.D. Cal. Mar. 2, 2025) (citation and quotations omitted). So, where the parties are not in competition with each other, the commercial speech exemption does not apply. *Id.* (finding commercial speech exemption inapplicable where

"[b]ased on the averments in the complaint, it [did] not appear that [defendant] was in competition with either [p]laintiff").

The parties to this action are not business competitors. (Compl. ¶ 42 (describing Infoblox as "an information technology automation and security company that sells a variety of cybersecurity products and services"); *id.* ¶ 22 (describing Skyforge as the operator of "several internet-based platforms"); *id.* ¶ 32 (describing Teknology as an entity that "provides servers and technical services for various companies, including Skyforge").) Accordingly, the commercial speech exemption does not apply.

**C. The Complaint Fails to State a Claim for Defamation.**

**1. The Vast Majority of the Challenged Statements Are Not "Of and Concerning" Plaintiffs.**

Propped up by misleading interpretations of case law and disingenuous citations to their own Complaint, Plaintiffs' Opposition seeks to downplay the importance of the "of and concerning" element of a defamation claim and the correspondingly heavy burden to plead this threshold element where, as here, the statements at issue do not identify either plaintiff. In doing so, Plaintiffs not only ignore the constitutional significance of the "of and concerning" requirement, but underscore their inability to plead this critical element with respect to the vast majority of the Challenged Statements.

Although the Opposition strains to portray California's stringent two-part pleading requirement as a cakewalk, Plaintiffs nevertheless concede that to survive a motion to dismiss with respect to statements that do not identify Skyforge or Teknology, they must allege that a third party actually understood the statements as referring to them — not just that a reasonable reader could so understand the statement. (*See* Opp. at 8 ("So long as at least one other person understood the statement to be about Sky/Tek, [the of and concerning] element is satisfied.").) *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008) (explaining that California law requires that an alleged "defamatory statement that is ambiguous as to its target not only must be capable of being understood to refer to the plaintiff, but also must be shown actually to have been so understood by a third party" (citations omitted)); *Baffert v. Wunderler*, No. 23-cv-1774-RSH-BLM, 2024 WL 5237441, at *25 (S.D. Cal. Aug. 27, 2024) (dismissing defamation claims where plaintiffs "fail[ed] to plead facts that would plausibly support the conclusion that a third party reasonably underst[ood] that post—or any other post at issue here—to

refer to [plaintiff]" (citations omitted)). The Complaint contains no such allegation and therefore fails to state a defamation claim as a matter of law with respect to at least 33[3] of the 35 Challenged Statements.

Allegations that certain of Plaintiffs' business partners "cancelled contracts with Skyforge in late 2024 because of defamatory statements" come nowhere close to satisfying this strict pleading requirement. (Opp. at 8.) The problem with Plaintiffs' argument is straightforward: the Complaint fails to allege that Hetzner, Credit Suisse, UBS, Corner Banca SA, or any other third party ever actually read or heard the specific Challenged Statements, let alone understood any of the Challenged Statements themselves to be "of and concerning" either Plaintiff. Rather, without referencing any of the specific Challenged Statements at issue, Plaintiffs contend that these business partners "*must have* recognized that the defamatory statements were about Plaintiffs" because certain of those entities terminated their agreements with Skyforge after Defendants allegedly directed some unidentified defamatory statements "directly to Skyforge's Business Partners." (Opp. at 8 (emphasis supplied); Compl. ¶¶ 152–53.)

Plaintiffs' argument is not only wholly speculative, it also makes no sense given Plaintiffs' own timeline of events. As alleged in the Complaint, Defendants contacted Plaintiffs' business partners "in or around November 2025" purportedly to communicate certain unidentified "false and defamatory statements regarding Sky/Tek's involvement in the so-called VexTrio criminal conspiracy to persuade those third parties to cancel contracts with Sky/Tek." (Compl. ¶ 66; *see also id.* ¶ 67.) The Complaint goes on to allege that "as a direct result of" these communications, Hetzner terminated its services agreement with Skyforge on November 15, 2024, and Corner Bank, Credit Suisse, and UBS respectively issued notices of cancellation for Skyforge on December 2, 2024, December 5, 2024, and December 16, 2024. (*Id.* ¶ 154.) Here's the rub: all of the Challenged Statements, which form the basis of Plaintiffs' defamation claim (*Id.* ¶¶ 130–135), were published or otherwise communicated *at least six months after* Plaintiffs' business partners allegedly cancelled their contracts with Skyforge. (*Id.* ¶¶ 87 (June 12, 2025), 91 (August 6, 2025), 95 (August 6, 2025), 98 (August 9, 2025), 100 (August 12, 2025), 118 (September 24, 2025).) Additionally, as alleged in the Complaint, Skyforge did not begin operating the Platforms, the subjects of many of the Challenged Statements, until December 31, 2024 — again, weeks *after* Skyforge's business partners allegedly cancelled their contracts. (*Id.* ¶ 23.) Against

[3] Contrary to Plaintiffs' contention, Defendants have not conceded that the statement identified at paragraph 95(vi) of the Complaint is "of and concerning" either Plaintiff. (Opp. at 8.) As detailed in Defendant's opening memorandum, that statement concerns itself not with Teknology itself but, rather, "Swiss networks *associated to* the firm Tekonology[.]" (MTD at 15 (citing Compl. ¶ 95 (vi)) (emphasis supplied).)

this backdrop, whatever it was that persuaded Skyforge's business partners to cancel their contracts, it could not have been an understanding that the Challenged Statements — published months *after* the cancellations took place — were "of and concerning" Plaintiffs.

Plaintiffs' efforts to avoid application of the group libel rule are similarly flawed and should be rejected out of hand. The law in California is clear: "where the group is large — in general, any group numbering over twenty-five members — the courts in California and other states have consistently held that [members of a group] cannot show that statements [directed at a group] were 'of and concerning them.'" *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986) (citations omitted). Statements concerning VexTrio — a group that, as alleged in Plaintiffs' own Complaint, "includes nearly a hundred companies and brands" — fall squarely within the group libel rule's prohibitions. (Compl. ¶ 59(vi).) In their Opposition, Plaintiffs urge the Court to simply ignore the group libel rule because membership in VexTrio is "readily ascertainable," apparently notwithstanding its size. (Opp. at 9.) Plaintiffs' argument in this regard is curious, particularly given that their own Complaint, including the specific paragraph Plaintiffs cite in support of their contention that VexTrio's membership is "readily ascertainable," states the exact opposite: namely, that "the dividing line between what is and isn't VexTrio is complicated." (Compl. ¶ 103.) In fact, given the Complaint's allegations regarding the complicated nature of VexTrio's makeup, it is hard to imagine a more apt scenario in which to apply the limitations imposed by the group libel rule.

**2. The Complaint Fails to Plead That Any of the Challenged Statements Are False.**

Plaintiffs' repeated suggestion that Defendants are obligated to establish the truth of the Challenged Statements at any stage of this proceeding — let alone in support of their motion to dismiss — betrays a fundamental misunderstanding of defamation law and, specifically, improperly seeks to shift the applicable burden. Both the First Amendment and California common law place the burden to plead and prove falsity on the libel plaintiff. *See, e.g.*, *Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 777–78 (1986); *Blatty*, 42 Cal. 3d at 1042. Thus, when a plaintiff fails to plead the falsity of the alleged libel, the complaint must be dismissed. For the reasons detailed in Defendants' opening brief, Plaintiffs have failed to satisfy this threshold pleading requirement. Their defamation claim should therefore be dismissed.

Tacitly acknowledging the Complaint's wholly conclusory approach to the falsity of the Challenged Statements, the Opposition takes a different tack. In their Opposition, Plaintiffs merely rewrite and repackage

the 35 Challenged Statements into six "claims" that apparently better fit their narrative of falsity. (Opp. at 10–13.) They then go on to point to an assortment of allegations in the Complaint that they contend support the falsity *not* of the 35 Challenged Statements but, rather, of their six revamped "claims." (*Id.*) The Southern District of New York recently rejected a similar approach to pleading falsity, explaining that, to survive a motion to dismiss, a libel plaintiff must allege facts sufficient to "explain what is actually contradicted or false about the challenged statements." *See 1st Amend. Praetorian v. N.Y. Times Co.*, No. 1:23-cv-00012 (MKV), 2025 WL 949575, at *42–44 (S.D.N.Y. Mar. 28, 2025) (dismissing defamation claim where, *inter alia*, plaintiff's allegations of falsity failed to "explain what is actually contradicted or false about the challenged statements[]" or to refute what the challenged statements actually stated (citation omitted)). Plaintiffs' similar approach to pleading falsity should likewise be rejected for at least two interrelated reasons.

*First*, Plaintiffs' six revamped "claims" misrepresent what the Challenged Statements convey. For example, contrary to Plaintiffs' contention, the Challenged Statements identified in footnote 2 of the Opposition do not state "that Sky/Tek are affiliated with or owned by 'VexTrio.'" (Opp. at 10.) The vast majority of these statements reference one of the Platforms — *not* Skyforge or Teknology. Even those statements that expressly reference either Plaintiff do not do so in a manner that identifies either as "affiliated with or owned by VexTrio." (*See* MTD at 15, 18-19.) The statements identified at footnote 3 of the Opposition likewise do not state that "Sky/Tek harbor or knowingly provide infrastructure to threat actors." (Opp. at 11; MTD at 14.) The same is true of the statements identified at footnotes 4 through 7 of the Opposition — none of them convey the "claim" Plaintiffs contend they do. (Opp. at 11–13; *see, e.g.,* MTD at 14.)

*Second*, because Plaintiffs' six "claims" misrepresent what is actually conveyed by the Challenged Statements, the broad allegations Plaintiffs point to in support of the falsity of those six "claims" — even if accepted as true for purposes of the instant motion — fail to plead facts establishing the falsity of the Challenged Statements at issue.

As just one example, the first Challenged Statement identified in the Complaint states that "Los Pollos had shuttered their push monetization, but they are just one entity in a sprawling criminal enterprise that makes up VexTrio." (Compl. ¶ 87(i).) Nothing in the Opposition asserts facts regarding the falsity of this specific Challenged Statement. (Opp. at 10–11.) Plaintiffs' citation to paragraph 3 of the Complaint illustrates this point. There, the Complaint alleges as follows:

> Neither Sky/Tek nor their employees are part of any criminal conspiracy—Russian or otherwise. They are not criminals, Sky/Tek are not controlled by anyone other than their duly appointed and well-respected, successful executives, and they answer to their shareholders, not to a Russian criminal gang.

(Compl. ¶ 3.) Even accepting as true the Complaint's allegations that "[n]either Sky/Tek nor their employees are part of any criminal conspiracy" and that Plaintiffs answer only to their executive and shareholders, those allegations do not establish the falsity of Los Pollos' decision to shutter their push monetization or Los Pollos' involvement in the VexTrio criminal enterprise. (*Id.* ¶¶ 3, 87(i).) As noted in Defendants' opening memorandum, the Complaint fails to specify the relationship between Plaintiffs and the Platforms, including Los Pollos, noting only that Skyforge "operates several internet-based platforms[.]" (*See* MTD at 14–15 n.5; Compl. ¶ 22.) Accordingly, allegations regarding Plaintiffs' corporate structure, organization, or services will not suffice to plausibly allege the falsity of statements concerning the Platforms — and vice versa. In any event, and contrary to Plaintiffs' contentions, allegations that an entity is legally organized, properly structured, controlled by its own executives, answers to its own shareholders, and/or has never been convicted of a crime, do nothing, in and of themselves, to state the falsity of statements purportedly accusing the entity of involvement in a specific criminal enterprise. (*See* Opp. at 10–11.)

**3. Several of the Challenged Statements Fail to Convey a Defamatory Meaning.**

As detailed in Defendants' opening brief, many of the Challenged Statements are not actionable for the independent reason that they convey no defamatory meaning as a matter of law. (MTD at 18–20.) In response, Plaintiffs, yet again rewrite and reimagine certain of the Challenged Statements in an effort to impute onto them a defamatory meaning untethered to what those statements actually convey. (Opp. at 14–16.) Even if Plaintiffs' strained interpretations had any purchase — which they do not — they suggest, at the very least, that the statements are ambiguous as to their meaning. California law is clear that where the allegedly defamatory statements have an "ambiguous meaning, or [are] innocent on their face and defamatory only in the light of extrinsic circumstances, the plaintiff must plead . . . that as used, the words had a particular meaning, or 'innuendo,' which makes them defamatory." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999) (citations omitted). Additionally, "[w]here the language at issue is ambiguous, the plaintiff must also allege [] extrinsic

circumstances which show [a] third person reasonably understood it in its derogatory sense." *Id.* at 646 (citations omitted). The Complaint includes no such allegations.[4]

**4. Certain of the Challenged Statements Are Constitutionally Protected Statements of Opinion.**

Plaintiffs posit that because the publications at issue were overseen by an "industry expert," "enabled" by Infoblox's unique technology, "backed by 'thousands of hours' of research," and directed to specific audiences, the *entirety* of the publications, including the Challenged Statements identified by Defendants as expressions of opinion, must be viewed as "factual statements" for defamation purposes. (Opp. at 13–14.) This is absurd. While Defendants agree that the "totality of the circumstances" should be considered when determining whether a statement is potentially actionable fact or nonactionable opinion, *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 260 (1986), Plaintiffs' interpretation would turn this contextual requirement on its head.

The fact that the publications at issue detail the thorough analysis, meticulous research, and data-driven technologies used to support Infoblox's reporting does not preclude Defendants from offering opinions based on such information. Indeed, the exact opposite is true: "An opinion based on fully disclosed facts can be punished only if the stated facts are themselves false and demeaning." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1159 (9th Cir. 2021) (citation and quotations omitted). This is because where, as here, "the facts underlying a statement of opinion are disclosed, readers will understand they are getting the author's interpretation of the facts presented[.]" *Id.* (citations and quotations omitted).

**D. The Complaint Fails to State a Claim for False Light.**

Plaintiffs appear confused as to what invasion of privacy tort they have asserted in this action. To clear things up, and as the Complaint itself proclaims: "Count Two" sounds in "False Light," one of four separate privacy torts recognized at common law. As Dean William L. Prosser has explained, and as the Restatement (Second) of Torts later adopted, the four privacy torts — "(1) intrusion into private matters; (2) public disclosure of private facts; (3) publicity placing a person in a false light; and (4) misappropriation of a person's name or likeness" — are distinct, arise from different actions and activities, and result in different categories of harm. California law follows this classification of privacy interests as embodied in the Restatement. *See Hill v. Nat'l*

[4] To the extent Plaintiffs contend that the Complaint's allegations regarding the cancellation of certain contracts between certain business partners and Skyforge satisfy this pleading requirement (Opp. at 16), that contention fails for the same reason those very allegations are insufficient to support the "of and concerning" element of a defamation claim (*see supra* at 6–8).

*Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 24–25 (1994) (citing 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 580–94, pp. 674–93).)

In this context, Plaintiffs' insistence that a corporation may, under certain circumstances, enjoy *some* right to privacy and, accordingly, may maintain *some* invasion of privacy tort under certain circumstances, is irrelevant. (Opp. at 16–17 (citing *H&M Assocs. v. City of El Centro*, 109 Cal. App. 3d 399 (1980) (discussing whether a corporate plaintiff can maintain a *public disclosure of private facts invasion of privacy tort*); *SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741 (2015) (discussing the bounds of a corporate entity's general rights to privacy with respect to a *discovery dispute* — not with respect to its right to maintain an invasion of privacy tort); *Brentwood Commc'ns Int'l Inc. v. Fully Torqued Prods. LLC*, No. 23VECV02011, 2025 Cal. Super. LEXIS 46239 (Cal. Super. Ct Aug. 1, 2025) (same)).) As the Northern District of California has held, the specific tort of false light invasion of privacy "is a right reserved exclusively for actual persons." *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1107 (N.D. Cal. 2011) ("[A] false light claim may be maintained only by individuals. False light implicates an invasion of privacy, which at common law in California is a right reserved exclusively for actual persons" (citations omitted)); *Kennedy Funding, Inc. v. Chapman*, No. C 09-01957 RS, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010) (dismissing false light claim because "a corporation . . . is not susceptible to the injured 'feelings' associated with invasion of privacy torts" and therefore "cannot state a claim for false light" (citations omitted)). Plaintiffs have failed to cite a single case to the contrary.

In any event, California courts have largely collapsed "false light" causes of action into defamation. *See, e.g.*, *Aisenson v. Am. Broad. Co.*, 220 Cal. App. 3d 146, 161 (1990) ("A 'false light' cause of action is in substance equivalent to a libel claim[.]" (citations omitted)). Accordingly, Plaintiff's false light claim should be dismissed on the same bases as their defamation claim.

**E. The Complaint Fails to State a Claim for Interference with Contract.**

As an initial point, and putting aside Plaintiffs' feigned confusion as to Defendants' constitutional arguments, because Plaintiffs cannot satisfy the constitutional requirements for defamation as a matter of law, as detailed *supra*, their interference with contract claim must also be dismissed. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (when ancillary tort claims are brought as a result of constitutionally protected

speech, they are "subject to the same First Amendment requirements that govern actions for defamation" (citations omitted)).

Plaintiffs' claim for interference with contract is also insufficiently pled as a matter of law, providing independent grounds for dismissal. To state a claim for tortious interference with contract, "the plaintiff must identify the terms of the contract, 'third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties.'" *Tripharma, LLC v. First Fruits Bus. Ministry LLC*, No. 8:21-cv-01806-JVS(JDEx), 2023 WL 2695476, at *8 (C.D. Cal. Feb. 15, 2023) (quoting *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1115 (C.D. Cal. 2015)). Notwithstanding Plaintiffs' broad claim that Defendants' purportedly defamatory statements interfered with "numerous" of their third-party business partners, the Complaint identifies only four such partners, leaving Defendants and the Court to guess at the identity of the rest. (Compl. ¶ 151.) Additionally, and even more damaging to their claim, the Complaint fails to identify the terms of their alleged contracts or plead facts regarding the "nature and extent of" Plaintiffs' contractual relationships with these business partners, making it impossible for the Court to determine "what contractual rights [Plaintiffs] possess[ed]" that could have been interfered with. *UMG Recordings, Inc.*, 117 F. Supp. 3d at 1115 (granting dismissal of interference with contract claim where nonmoving party failed to allege facts sufficient to show what contractual rights could have been interfered with (quotations and citations omitted)). Contrary to Plaintiffs' contention, allegations that merely describe a business partner as a "web-hosting company" or a bank — without alleging the contractual terms and "nature and extent" of Plaintiffs' contractual relationships — fail, as a matter of law, to satisfy this pleading requirement. *Id.*; *see also In re Centerstone Diamonds, Inc.*, No. 09 BK 23945 PC, 2014 WL 1330186, *6 (Bankr. C.D. Cal. Apr. 3, 2014) (dismissing interference claims where complaint merely "refers to a 'Consignment Agreement with FCC' and identifies an alleged overlap between customers and consignees of the debtors and . . . non-debtor entities").

### F. The Complaint Fails to State a Claim Under the Lanham Act.

Plaintiffs argue that they have adequately alleged "how the challenged statements constitute 'commercial advertising or promotion'" for purposes of their Lanham Act claim. (Opp. 20.) The Complaint makes a barebones and conclusory attempt at pleading this element. (Compl. ¶¶ 158–59.) It also makes a bizarre attempt to connect the Challenged Statements to the fact that Infoblox separately engages in marketing of its products to potential customers. (Opp. 20 (citing Compl. ¶¶ 5, 42–57).) But this Court should not allow these

conclusory allegations to "overcome the commonsense conclusion" that the Challenged Statements were simply not made in "commercial advertising or promotion" — an inescapable conclusion from a review of the materials in which the Challenged Statements appear; that is, highly technical industry-specific blog posts and presentations. *Prager Univ. v. Google LLC*, 951 F.3d 991, 999–1000 (9th Cir. 2020) (dismissing Lanham Act claim challenging YouTube's content moderation policies because plaintiff "did not allege any facts to overcome the commonsense conclusion that [the challenged statements] are not advertisements or a promotional campaign" (citations omitted)). Indeed, courts routinely dismiss Lanham Act false advertising claims at the pleadings stage for failure to plausibly allege that challenged statements were made in commercial advertising or promotion. *See, e.g.*, *Child.'s Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 764 (9th Cir. 2024) (affirming dismissal of Lanham Act claim because challenged statements were not made in commercial advertising or promotion, noting that Meta's "economic interests are far too remote from the challenged speech for it to be plausible that the economic benefit was the primary purpose for speaking" (quotations omitted)), *cert. denied*, 145 S. Ct. 2846 (2025); *Peak Health Ctr. v. Dorfman*, No. 19-cv-04145-VKD, 2019 WL 5893188, at *7 (N.D. Cal. Nov. 12, 2019) (dismissing Lanham Act claim where challenged article "[o]n its face . . . does not appear to be an advertisement or promotion"); *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117–18 (C.D. Cal. 2004) (finding challenged statements within spyware detection software program did not constitute commercial speech within the meaning of the Lanham Act, noting that defendant "functions like various consumer protection groups in that it gathers publicly-available information about various software products and then discloses that information to the general public").

Moreover, to state a viable false advertising claim under the Lanham Act, a plaintiff must also allege facts sufficient to show how the challenged statements are false. *See Kamath v. Itria Ventures, LLC*, No. 23-cv-05153-SVK, 2024 WL 590603, at *5 (N.D. Cal. Feb. 13, 2024) (dismissing Lanham Act claim for failure to "explain why these advertisements and representations were false or misleading."). For the reasons detailed *supra*, Plaintiffs' contrived and self-serving re-imagining of the Challenged Statements to better map onto their allegations of falsity cannot satisfy this threshold pleading requirement.

**G. The Complaint Fails to State a Claim for Civil Conspiracy.**

Plaintiffs assert that their "civil conspiracy claim is designed to hold Defendants to account for the tortious conduct of third parties with whom Defendants conspired[.]" (Opp. at 21.) As Defendants have already

explained, however, civil conspiracy is not a standalone cause of action in California. (MTD at 23 (citing *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994)).) To state a claim for civil conspiracy, a plaintiff must plausibly allege facts supporting both the elements of a civil conspiracy *and* an underlying tort committed through that conspiracy. For example, in *L.A. Memorial Coliseum Commission v. Insomniac, Inc.*, on which Plaintiffs rely (Opp. at 21), plaintiffs brought a cause of action for "conspiracy to defraud" and alleged facts showing both the elements of a civil conspiracy and an underlying fraud carried out through the conspiracy. 233 Cal. App. 4th 803, 832–34 (2015). Here, in contrast, Plaintiffs make no attempt at pleading any underlying tort based on a conspiracy theory of liability. (*See* Compl. ¶¶ 165–69.) Merely referencing Defendants' alleged conspiracy "with third parties, including co-conspirators, to engage in the unlawful acts alleged herein, including defamation, false light, intentional interference with contract, and trade libel" is far from sufficient. (Compl. ¶ 166.) To be clear, the fact that Plaintiffs have separately attempted to allege claims for defamation, false light, and tortious interference based solely on Defendants' alleged direct conduct does not satisfy the "underlying tort" requirement for purposes of a conspiracy-based claim.

## III. <u>CONCLUSION</u>

For the reasons set forth above, and in Defendants' opening brief, Defendants respectfully request that the Court dismiss the Complaint with prejudice and award Defendants their reasonable attorneys' fees and costs pursuant to the Anti-SLAPP Law.

Dated: March 6, 2026

GREENBERG TRAURIG, LLP

By: *<u>/s/ Alex Linhardt</u>*
Alex Linhardt
Michael J. Grygiel
Kelly L. McNamee
Christina N. Hernsdorf

*Attorneys for Defendants Infoblox Inc. and Renée Burton*