UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable P. Casey Pitts, District Judge

SKYFORGE DIGITAL AG, et al., )
)
Plaintiffs, )
)
vs. ) No. C 25-09502-PCP
)
INFOBLOX, INC., et al., )
)
Defendants. )
______________________________)

San Jose, California
Thursday, April 30, 2026

TRANSCRIPT OF THE OFFICIAL ELECTRONIC
SOUND RECORDING 1:11 - 1:32 = 21 MINUTES

APPEARANCES:

For Plaintiffs:

Winston & Strawn, LLP
300 North LaSalle Drive
Suite 4400
Chicago, Illinois 60654
BY: SEAN G. WIEBER, ESQ.

Winston & Strawn, LLP
333 South Grand Avenue
Los Angeles, California 90071
BY: KEVIN P. SIMPSON, ESQ.

For Defendants:

Foley Hoag, LLP
1301 6th Avenue
New York, New York 10019
BY: MICHAEL J. GRYGIEL, ESQ.
KELLY MCNAMEE, ESQ.

Transcribed by: Echo Reporting, Inc.
Contracted Court Reporter/
Transcriber
echoreporting@yahoo.com

Thursday, April 30, 2026 1:11 p.m.

P-R-O-C-E-E-D-I-N-G-S

--oOo--

(Call to order of the Court.)

THE CLERK: Now calling 25CV09502, Skyforge Digital AG, et al., versus Infoblox, Inc., et al.

Counsel, please approach the podium and state your appearance for the record.

MR. WIEBER: Good afternoon, your Honor. Sean Wieber -- good to see you, again -- from Winston and Strawn on behalf of the Plaintiffs. And I'm joined by my colleague, Kevin Simpson.

THE COURT: Good afternoon. I thought -- I was like, he looks familiar. And, I was like, certainly you aren't, you know, but I was like, eh.

MR. GRYGIEL: Good afternoon, Judge Pitts. Mike Grygiel from Foley Hoag in New York City. We were also here a month ago, as Counsel Wieber pointed out, and with me, again, is my colleague Kelly McNamee.

THE COURT: Good afternoon. And I know that I owe you a Google link, so I'm working on that to get that as quickly as I can.

So, we're here for the initial case management conference, and I think the main issue to talk about is the schedule and the differing approaches that have been

proposed. Before we do that, I do want to talk about a settlement in ADR, and I saw the parties' different positions, and we talked about that a little bit in the prior hearing. You know, we do require all parties to engage in some form of ADR as part of the process. And, so, I will ask that -- often, under the circumstances, given difference of opinion, I'll say, 28 days. I will ask that within 28 days you either stipulate to engage in a particular form of ADR, as set forth on -- and using the form on our website, or notify the Court of a need for an ADR conference, which is an opportunity to meet with our ADR coordinator to see if you can reach agreement on the form of ADR. Now, that's not -- that's not a commitment as to the timing. You can say that we think that ADR would be best pursued down the road, and it's certainly not a commitment to do it within 90 days, filing the form. I'm pretty flexible in terms of when you think it's most useful to engage in ADR, but I do want to get an agreement on what that will look like, because if the case does proceed, I will expect there be a -- some form of ADR effort undertaken.

Any reason that doesn't -- shouldn't be feasible?

MR. WIEBER: For the Plaintiffs, no, your Honor. We were -- if you're recalling, you had raised the concept of a potential magistrate judge mediation earlier. That's

where the disconnect was -- well, not disconnect -- the differences in the parties' submissions to your Honor in the joint case management statement. My client's position would -- remains the same. We would be open to any of the avenues trying to get over a log jam.

So, we -- to clarify, on the submission as counsel, when we leave here today, we'll connect with our clients and then have that dialogue -- is what's to be considered is -- I know there's the ADR prong, that also involves private mediation, are we to also consider that the concept of the magistrate judge mediation would also still be in -- something that we should consider to work through in that stipulation?

THE COURT: That -- I would say that should be an option, I think because I mentioned previously, I don't usually send cases to the magistrate judge in the first instance, but this may be an appropriate candidate for that. So, you can consider that, but what needs to happen is you agree on one of those four forms that we provide, two of which are provided at no cost to the parties by the Court. And, as you probably heard me tell the other counsel, that if you choose private mediation, I want -- I'd like to have the form include the specific private mediator that you would intend to use.

MR. GRYGIEL: Certainly, your Honor. Defendants

will comply with that request.

THE COURT: Okay. So, I'll give you 28 days to see if you can reach agreement, and, as I said, if not, you can file a notice for the need -- a notice of the need for an ADR conference.

MR. WIEBER: Okay. Thank you.

THE COURT: With respect to the schedule. I mean, it seems to me that the real difference is close -- you know, roughly a six-months difference in terms of when class discovery -- or when fact discovery would close. Am I right that that's kind of the core difference between the two parties?

MR. GRYGIEL: Correct. Six or seven months, your Honor. Correct.

MR. WIEBER: There's -- yeah, there were -- your Honor, as I was thinking if I was in your shoes, I saw three areas of difference. One you just hit on, fact discovery. There's a six month delta, meaning that the Plaintiffs have a schedule that would end six months earlier than Defendants' proposal on fact discovery. And, then, there is a seven month difference for the expert discovery. Again, with Defendants having a longer calendar. And, then, an eight month difference for the hearing date for any dispositive motions or Daubert. And, then, the net total, once that all shakes out, ends up being a seven month

difference in the trial setting conference between our proposal and the Defendants. Again, with Defendants being seven months in arrears, once all of those dates play out.

THE COURT: And, so -- so, okay. I mean, that's helpful. A couple of things. One, I am (indiscernible) on Defendants' schedule. As you probably heard, the schedule that I would adopt today will end with the trial setting conference, rather than setting a trial date, because that -- the purpose of that conference will be to figure out when we're actually going to go forward.

MR. GRYGIEL: Understood, your Honor.

THE COURT: With respect to the timing. I mean, I think -- you know, my preference in all instances is to have the parties reach agreement on the way that they think the case should proceed, and, you know, we have a six month difference here. I guess the question is, is there a possibility that with further efforts the parties could reach agreement on the proposed schedule here? I mean, I think -- I will say the Plaintiffs' schedule is incredibly aggressive. Right? I mean, I think it would be -- fact discovery would be closed in four months roughly. Something like that. Which seems to be a very aggressive schedule. So, I'm wondering if there is a possibility that with further discussions between the parties, there might be a possibility of bridging the differences as they stand?

MR. GRYGIEL: We can certainly try, your Honor. I mean, our position -- and I say this with all due respect to opposing counsel, is that, with fact discovery scheduled on their submission to close in four months, that's beyond unrealistic. We have -- if, depending on the outcome of the pending 12(b)(2) and 12(b)(6) motions, where there's 35 statements alleged to be actionable in defamation in this case, the nature of the allegations in the complaint is sprawling. We're looking at an awful lot of cross border in international discovery. I'm very skeptical the document discovery will necessarily be fully completed in four months. Before we even get to depositions, we're talking about foreign nationals, including the parties, and some non-parties. The current schedule proposed by the Plaintiff, we just think is entirely unrealistic.

MR. WIEBER: So, your Honor, just a couple of I guess points in response, and then in conjunction with you raising maybe being seen as a more aggressive calendar.

You'll recall, just because it has been spread on the record in multiple areas, sort of where our position as the Plaintiffs were is wanting to move the case along. And, then, we had this -- the phrase that we had used as sort of they had granted themselves sort of a stay until we were before your Honor just last month. And they did so in conjunction with having the anti-SLAPP and the motion to

dismiss.

So, when we did have the initial 26(f), our calendar, actually if you were to trigger off of when did they actually get our discovery, that was in the middle of January. So it's actually closer to seven and a half months that they've had that. And, actually, it goes much earlier than that, because in the record -- in the letter exchange, the pre-suit counsel exchange, there was also -- in September, and then their response in October, where there was identification of -- they had their files ready, they had their evidence ready and they were going to tender it in conjunction with the anti-SLAPP answer. Obviously, that didn't -- that's not how it played out. I'm not casting aspersions on that, but it didn't play out. But, I do believe they've had, for a number of months, a lead time on this.

So, the schedule that we put together on behalf of the Plaintiffs is not meant to, I see Defendants want to go long, my Plaintiffs want to move so it may go unreasonably short, and then therefore try to meet in the middle. I stand before you having worked with the team, thought about some of these things that Counsel has raised of international law, overseas witnesses. And the schedule that we proposed, we fully intend to commit to. So, it's not -- it's not being seen as aggressive, for being for

aggressive sakes. We've tried to map this out, understanding what my clients' desires are, and the fact that to this day all of the defamatory statements remain up and they're being harmed.

So, I'm kind of caught in the pickle of having to fully understand what their desires are. And I can totally get that, especially from a damages perspective, versus I do a lot of defense work and I understand that slowing things down as the -- again, not pejoratively, but taking things slower is often the defense side, and we just disagree. And we tried to put together a calendar that is commiserate with the risk profile of the case and the claims.

MR. GRYGIEL: Your Honor, in response to that, we certainly, as you know from the papers before the Court, disagree with the characterization of ourselves unilaterally granting us a stay in discovery and we're prepared to move forward. The problem and the concern I have is really a practical one. With the schedule proposed by the Plaintiffs, I guarantee you, Judge Pitts, we will be back here saying there has to be more time. This is simply an impractical approach to what potentially is a complicated comprehensive discovery matter. And, it just seems to me that to avoid that -- and we are not in any way looking to unnecessarily delay discovery or slow things down. And, in candor, we're more concerned about obtaining full compliance

and production from the Plaintiffs' side of this than we are from our own witnesses. Because, again, there is an awful lot of cross border international discovery here, both documentary and with respect to potential deposition scheduling, which will take time.

My understanding is, and the Court probably is more familiar with this than I am, that there may be some European GDPR privacy regime considerations that might kick in and slow down, or make documentary discovery more complicated. And, I think all of those are really factors that have to be considered in the mix here.

And, we did take a look at some of your representative scheduling orders in several cases, and we have five or six that we looked at, and typically it seems that from today's date, CMC date to the trial setting conference date, your Honor's orders from the cases we looked at went from -- the fastest was 13 months and the longest was 20 months. And, what the Plaintiffs here are proposing is 10.3. Ours is 18.3.

Now, I certainly understand that how those dates play out in a given case depends on the nature of the claims and the scope and complexity of the proposed discovery, but here, I would respectfully submit, your Honor, that we're on the longer side of the continuum, rather than the shorter side.

MR. WIEBER: So, just briefly, your Honor. Just as you're hearing this, I'm hearing now, just real time, I have not hear -- so these concerns that Counsel is presenting of European privacy laws overseas, none of that has been raised ever, over email, meet and confers, video, telephone, ever. So, the first time hearing it is now. And we went back and forth on this exchange, as you can imagine, to get the drafts to your Honor by the due date. So, this is the first time I'm hearing that.

I don't think we should be a self fulfilling prophecy of identifying road bumps that are not yet upon us. We're -- we're all at shops capable of coming before your Honor. If we cannot do something -- or come in before the magistrate, if needed, but we're willing to commit on behalf of the Plaintiffs that -- I'm not trying to create road blocks from us going and saying, this may happen, this may happen, this may happen, this may happen. Nothing has happened.

We've served discovery, they've served discovery. We're supposed to make the first production next week. I think we're off to the races. So, I don't want to say that -- is there never a chance that we couldn't meet and conferred to try to get a different calendar, clearly we'll follow your instructions and will do if you're saying we should do that to come up with a new proposal. I'm just not sure.

I think a lot of what's -- they clearly want the ruling on the motion to dismiss in the anti-SLAPP. Let's just call it what it is. That's critical -- it's critical for them, I think, in their defense and how they're probably counseling with their client and how they're connecting with their insurance carrier on the matter. And that has been holding things up and that's a decision -- a litigation strategy decision that they implemented, and they did so months ago. It's not of my making.

So, on behalf of my clients, we would like to go -- and I'm just telling you in good faith -- we think we can -- we fully intend to do our darndest to hit these dates that we've put down.

MR. GRYGIEL: Your Honor, it will come as no surprise to the Court. Would we prefer not to engage in discovery until we get a ruling on the 12(b)(2) and 12(b)(6) motions, certainly. Because that could dramatically curtail the scope of discovery in the case. There's no question about that.

However, I'm a little surprised to hear that GDPR is surfacing from my mouth today for the first time, when the parties, in good faith -- I'm not saying otherwise -- we've been trying to negotiate a protective order to submit to the Court to govern discovery. The Plaintiffs themselves, within the last 48 hours, have raised concerns about

European privacy in GDPR, which may expressly be included in the protective order at their suggestion. So, potentially that clearly is an implication in the case.

And, as you know, your Honor, from our pending stay motion, we think we meet both prongs that are necessary to allow for a stay to be granted, pending the Court's resolution of the pending dispositive motions.

THE COURT: All right. So, I've heard from both the parties on this issue, and I understand that some of the delay may be on me, as opposed to on anyone else, and that's fair. You know, we're busy these days and I'm doing my best, but -- so I hear that. And I don't take that as -- don't worry -- I'm fine to own up to that. That's the privilege of being up here and tenure.

So, I think what I'm hearing -- I mean, I -- what I -- I look at the schedules and I see that ultimately Defendants have proposed what I think is a -- you know, in a case before this Court, I mean, it's -- it would get us to trial in roughly -- it could -- I mean, we'll probably be beyond that, but certainly it gets us to a trial setting conference in less than two years and provides for just over -- even using the January dates we talked about, just over a year for discovery in the matter. And that's -- you know, for most of -- for the cases -- the complicated cases that come -- it's actually a pretty aggressive schedule. Now, I'll

say, almost all of the orders you saw were probably the parties had agreed upon a fee -- the deadline, so I may not --

MR. GRYGIEL: We wish we could agree, your Honor.

THE COURT: And that's what I always try to do, as you've seen. I really like to encourage cooperation and agreement so that I can spend my time and you can spend your time talking to me about the things that are core fights in the case. And it's my job to resolve those and I want to do that, but I have found that it's -- it can be easy to lose track for myself, and sometimes for -- even for counsel for what those are when everything is being brought up.

I mean, so what -- that's sort of my view on this. And I understand this sort of desire to take an off to the races approach on this case. I guess my -- it seems to me that the way to handle that is to say, if there is a real need for relief soon on the claims being asserted here, and I think it seems to me the way to do that -- to seek that relief, rather than trying to compress discovery into the next four months in a way that -- I have no doubt that the firms could do it. You're well -- presumably well staffed and well -- you know, large law firms with a lot of people. I have no doubt that it could be possible. The question is, is is necessary when the alternative is that, you know, preliminary relief may be available. And they obviously

would have objections to that, and various issues, but it -- you know, this may be exactly the kind of circumstance which is why we have a rule regarding preliminary relief pending a determination on the merits. And that might be -- rather than trying to complete discovery in the next four months, that might be the method that is the way to deal with your clients' concerns, which I understand about there being -- especially statements that remain up and that you believe are defamatory.

So, is there a reason that we shouldn't think that, to the extent there is a need and a basis for providing some kind of interim relief, that that should be done through a motion for preliminary injunction, as opposed to by trying to do all of the discovery in the next four months?

MR. WIEBER: Fair question. Of course, emergency relief by definition obviously ends up being expensive than other ways (sic), and in some ways can slow things down.

THE COURT: But, I -- you know, it would be the -- if you could get all of the discovery done --

MR. WIEBER: Understood.

THE COURT: -- in four months. Presumably with a little more time some people could be working on a preliminary injunction motion while the others --

MR. WIEBER: And I hear you, and I'm just reacting real time. I think it's a very -- I know you're not -- I

think it's a good -- I think, yes, we can evaluate that and will. And, in some ways, because we haven't been able to yet get to, you know, an ADR or settlement conference, we're just now starting the discovery, it might be the only way. And, again, it's not Counsel, it's just the clients' positions on these issues. They're being harmed. They won't -- they -- obviously, we have asked, "Can we take it down to at least mitigate this voluntarily?" Never gotten an answer on that. To be left with only recourse to run on a TRO or a preliminary injunction, that might be the recourse, and clearly we'll have to think about it with the team and counsel with the clients on that. I was hoping -- I was hoping that in light of perhaps the olive branches that we've extended, some team reading about the concept of potentially an emergency early settlement conference, now it's been disclosed through the 26(a)(1) disclosures that an insurance carrier is now involved and is covering the claims. At least facially, all of those things seem to me to be indications that I was hoping Defendants could self select into that process, as opposed to multiplying the litigation. But standing here right now, I can't -- I can't commit that we'd move for a preliminary injunction. Clearly, that is something that we're going to have to evaluate.

THE COURT: And, I mean, I guess -- and, when you

think about it -- I mean, the other thing to think about is that, even under -- you know, even under the schedule you've proposed, you know, and assuming we have a lot of availability on all of our schedules in 2027, we're talking probably about a summer 2027 trial on these claims. So, you're still going to have an almost two-year period before the filing of the complaint and the potential relief post-trial. And, so, given that, again, I'm not sure that -- that compressing the discovery right now to get to that point, as opposed to saying if there's a need -- and you don't have to commit to it -- but if there's a need for that -- for relief in the meantime, and the reason we're moving fast is, that -- is for that -- towards that end, then it seems like that is a -- you know, a preliminary injunction context, as opposed to sort of pressing the trial. And it seems to me that the Defendants' schedule is kind of -- as I say, is still reasonably aggressive schedule for a case that does involve some complicated issues that -- and presumably complicated expert testimony and the like.

And, so, I'd be more inclined -- so, I guess my inclination is to adopt Defendants' proposed schedule. I will change a few things in it. As you probably heard, I don't generally set hearing dates in my scheduling orders, so I will change -- change a few things in a minor way in the scheduling order that I issue, but generally to adopt a

schedule that looks like Defendants' proposed schedule. And I think -- and I will expect to hold us to hold to that. You know, I will expect that fact discovery deadline to be one that we -- all efforts and everything is done to make sure that that deadline holds and we don't need to move it. Now, if there are some minor disputes that are presented before the deadline that get resolved after and resolved in very targeted additional matters, I will allow that, but I will expect that we be held to this deadline that they've proposed and that we move forward. And this will also give, you know, the parties an opportunity to engage in private mediation or a settlement conference if they say choose, and to have the space if there is a need for preliminary relief to do that. I would say, unless something changes, I would encourage it to be a noticed motion for preliminary injunction, rather than a TRO, which just given the timing between when the case was filed and where we are now, may be a challenge to show that a temporary restraining order is appropriate, as opposed to doing something --

MR. GRYGIEL: There's also this little thing called the First Amendment --

THE COURT: Well, there's that and I --

MR. GRYGIEL: -- that makes it difficult to get --

THE COURT: I presume that that would be a -- well, a big feature in any opposition brief, but that --

MR. GRYGIEL: Big feature. Correct.

THE COURT: That would be addressed at the appropriate time.

MR. GRYGIEL: Uh-huh.

THE COURT: So -- but that's -- that's what I think makes sense, in terms of both protecting the interests that are at stake, but also realizing under either of these schedules, we are not going to be getting this case to trial until next summer, or next, you know, fall or thereafter -- shortly thereafter. And -- you know, unless it's resolvable on summary judgment. But, that's kind of where things stand, and I think that that is the way that we should move forward.

And, you know, discovery is open. As it stands right now, discovery is open and I haven't issued any stay of discovery, so I would encourage you to pursue discovery, especially if there's discovery you might need -- think you need to take in support of a motion for preliminary relief. You're free to do that as we stand here today. And I think that that will be an appropriate way for us to move forward, Make sense?

MR. GRYGIEL: Yeah. Thank you, your Honor.

MR. WIEBER: It does, your Honor. Thank you.

THE COURT: Okay. Is there anything else that -- that Plaintiff wanted to raise today?

MR. WIEBER: No.

THE COURT: Anything else from Defendant?

MR. GRYGIEL: Nothing, your Honor.

THE COURT: Okay. So, but we'll move forward obviously, and I encourage this from all sides to, you know, try to find as many areas of (indiscernible) as many times as possible. Obviously, there's -- you know, both -- I think, obviously there's a lot of emotion here, particularly with the clients' -- your clients feeling like they've been defamed. Your clients feeling like they're exercising their First Amendment rights. I mean, that can get very heated. In some ways it comes to counsel to be intermediaries in that context, and so I -- and, I know you've reached agreement on some things and I've seen that, so I just encourage that process to continue.

MR. WIEBER: Thank you.

MR. GRYGIEL: Thank you, your Honor.

THE COURT: Thank you. Have a good afternoon.

(Proceedings adjourned at 1:37 p.m.)

CERTIFICATE OF TRANSCRIBER

I certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages of the official electronic sound recording provided to me by the U.S. District Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken; and, further, that I am not financially nor otherwise interested in the outcome of the action.



Echo Reporting, Inc., Transcriber

Thursday, May 7, 2026