United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SKYFORGE DIGITAL AG, et al.,

Plaintiffs,

v.

INFOBLOX INC., et al.,

Defendants.

Case No. 25-cv-09502-PCP

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DENYING DEFENDANTS' MOTION TO STRIKE, AND DENYING DEFENDANTS' MOTION TO STAY DISCOVERY**

Re: Dkt. Nos. 39, 47

Plaintiffs Skyforge Digital AG and Teknology SA (together Sky/Tek) assert claims of defamation, false light, intentional interference with contract, false advertising, and civil conspiracy against defendants Infoblox and Infoblox executive Renée Burton. Sky/Tek alleges that the defendants told Infoblox's customers and attendees at certain advertising industry events that Sky/Tek's advertising platforms Los Pollos, Tacolo.co, and Adtraficos are connected to a Russian cybercriminal organization called VexTrio. Defendants move to dismiss the claims against Burton for lack of personal jurisdiction and move to dismiss the claims against all defendants for failure to state a claim. Defendants also move to strike Sky/Tek's complaint under California's anti-SLAPP statute. Dkt. No. 39. Finally, Infoblox asks the Court to stay discovery pending a decision on their motion to dismiss. For the reasons stated below, the Court grants defendants' motion to dismiss for lack of personal jurisdiction as to Burton, grants in part and denies in part defendants' motion to dismiss for failure to state a claim, defers ruling on defendants' motion to strike, and denies defendants' motion to stay discovery.

## BACKGROUND

Skyforge Digital AG and Teknology SA are Swiss corporations.[1] Since at least December 31, 2024, Skyforge has operated internet advertising-related platforms Los Pollos, Tacolo.co, and Adtraficos. Complaint ¶¶ 22, 23. Los Pollos "is an affiliate marketing network that boosts website-traffic monetization by matching users to the best offers available via smartlinks, which are URLs that direct users to different websites based on their device, location, and other criteria." Complaint 4 ¶ 24. Tacolo.co helps websites and advertisers serve advertisements selected by publishers "through push notifications, banner ads, or on a pay-per-click basis." Complaint 4 ¶ 25. Plaintiff Teknology is owned by Skyforge and operates Skyforge's servers. Complaint ¶ 32.

Skyforge's platforms help connect advertisers with websites. Complaint ¶ 27. Skyforge makes money from fees paid by advertisers for traffic that Skyforge directs to any website. Complaint ¶ 29. Los Pollos has more than 65,000 affiliate websites and hundreds of advertising partners. Complaint ¶ 31.

Infoblox is an IT automation and security company that sells cybersecurity services, including a "DNS Threat Intelligence" product to detect and prevent cybersecurity threats. Complaint ¶¶ 42, 45. To market its offerings, Infoblox and Burton have written blog posts that identify IT security risks for businesses. Complaint ¶¶ 43-57.

Infoblox has written several blog posts and made public statements connecting Sky/Tek to a purportedly criminal enterprise known as VexTrio, which purportedly has Russian connections and steals money from people. Complaint ¶ 59. According to Infoblox, VexTrio runs "malicious campaigns" to facilitate scams, spread spyware and other unwanted programs, and serve pornographic content. Complaint ¶ 58.

Throughout 2025, Infoblox publicly and repeatedly reported that Sky/Tek was part of VexTrio. In a June 2025 blog post, "Vexing and Vicious: The Eerie Relationship Between WordPress Hackers and an Adtech Cabal," Infoblox accused Los Pollos, Taco Loco, and

[1] For the purposes of defendants' motions, the Court assumes the truth of the facts alleged in plaintiffs' complaint.

United States District Court
Northern District of California

Adtrafico of being "malicious adtech" and "just one entity in a sprawling criminal enterprise that makes up VexTrio." Complaint ¶¶ 85, 87i, 87ii.

In an August 2025 blog post, Burton stated that Infoblox had reported Los Pollos's domains to providers and had seen tens of thousands of websites redirect their traffic away from those domains. Complaint ¶ 70. In a different blog post from August 2025, "VexTrio's Origin Story: From Spam to Scam to Adtech," Infoblox accused Skyforge affiliates of being "embroiled in a Russian-nexus cybercriminal organization with close ties to some of the most prolific website hackers in the world[.]" Complaint ¶¶ 94, 95i. The post identified Los Pollos, Taco Loco, and Adtrafico as "affiliate advertising networks" for VexTrio. Complaint ¶ 95vii. The post explained that Adtrafico defrauds users by selling products to users for one price and then, after those users provide their credit card information, charging a higher price. Complaint ¶ 95ix.

On a podcast titled "Dark Reading" that was also posted to YouTube in August 2025, Burton reiterated that Los Pollos was part of VexTrio. Complaint ¶¶ 97, 98. On August 12, 2025, Infoblox published a third blog post titled, "VexTrio Unmasked: A Legacy of Spam and Homegrown Scams," accusing Sky/Tek of spam and scam activities through "malicious apps." Complaint ¶¶ 99, 100(ii). Throughout 2025, Infoblox's Burton posted on LinkedIn or spoke publicly three times that Skyforge was working with VexTrio. Complaint ¶¶ 79–82.

Also in August 2025, Infoblox discussed Sky/Tek at a cybersecurity conference in Las Vegas. Complaint ¶ 89. Burton and other Infoblox employees presented a slide presentation with statements about Sky/Tek and again called Sky/Tek part of "the world of malicious adtech," including by identifying individuals affiliated with Sky/Tek as part of VexTrio and the "world of malicious adtech." Complaint ¶ 91(i). Infoblox's slide deck accused Skyforge of creating fake mobile apps and fake credit card offers. Complaint ¶ 91(vi), (vii). One slide showed a picture of Sky/Tek affiliate Guilio Cerutti and said, "Bonus: *If you have a globally unique name, change it before you go into crime*." Complaint ¶ 91viii.

Sky/Tek makes other allegations against Infoblox as well. Infoblox allegedly "tri[ed] to disrupt[] the Los Pollos platform" by disclosing related domains to Sky/Tek's partners, including Hetzner, a German web-hosting company that consequently cancelled its contract with Sky/Tek.

United States District Court
Northern District of California

Complaint ¶¶ 65–67. In late 2024, Infoblox allegedly hacked Teknology's servers, which Sky/Tek alleges based on Infoblox's posting internal Sky/Tek images that were not otherwise publicly available. Complaint ¶ 72. Around that time, Skyforge's CEO Cerutti emailed Infoblox to complain about defendants' purportedly false statements and offered to meet with Infoblox, but Infoblox did not respond. Complaint ¶¶ 76–78.

Sky/Tek alleges that Infoblox is incorrect regarding its alleged connections to VexTrio. It points out that neither Skyforge nor Teknology have been indicted or convicted of a crime. Complaint ¶ 36. They also allegedly have "no affiliation and no relationship with Russian (or any other) cybercriminal organizations, Russian criminals, or the Russian government." Complaint ¶ 111.

On August 15, 2025, Teknology informed Infoblox that Infoblox's August 6, 12, and 14, 2025, blog posts were false and asked Infoblox to remove them. Complaint ¶ 115. Infoblox declined, saying that they "[stood] behind their research." Complaint ¶ 116. After Infoblox continued to accuse Sky/Tek products of being part of VexTrio, including during a September 24, 2025, security conference, Sky/Tek sent a letter to Infoblox rebutting Infoblox's public statements. Complaint ¶¶ 117–20. Sky/Tek asked Infoblox to take corrective measures, including retracting its posts and issuing a correction. Complaint ¶ 121. Infoblox again declined. Complaint ¶ 122.

Sky/Tek filed this suit against Infoblox and Burton on November 4, 2025. Sky/Tek alleges that Infoblox and Burton are liable for defamation and defamation per se; false light; false advertising in violation of the Lanham Act; and civil conspiracy. Skyforge alone alleges an intentional interference with contract claim against InfoBlox and Burton. Complaint ¶¶ 150-157. Sky/Tek alleges that it has "suffered a massive loss in revenue and profits" amounting to tens of millions of dollars as a result of the "four- or five-fold decrease in traffic and revenue" caused by Infoblox's statements. Complaint ¶¶ 124, 125, 128.

Defendants now move to dismiss the claims against Burton for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and to dismiss the claims against all defendants for failure to state a claim under Rule 12(b)(6). Defendants also move to strike Sky/Tek's complaint under California's anti-SLAPP law and to stay discovery.

**LEGAL STANDARDS**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." In opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden to prove that the Court's exercise of personal jurisdiction over the moving defendant is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). On such a motion, the Court can consider evidence contained in affidavits and is not limited to the allegations of the plaintiff's complaint. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Dismissal is required if the plaintiff fails to allege facts allowing the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the nonmoving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

Where, as here, a defendant's anti-SLAPP motion challenges only the legal sufficiency of a party's pleading, *see* Motion to Dismiss at 10–11, the motion is "treated in the same manner as a motion under Rule 12(b)(6)…." *Planned Parenthood Fed. of Am., Inc. v. Ctr. for Med. Progress*,

890 F.3d 828, 834 (9th Cir. 2018) (quoting *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 983 (C.D. Cal. 1999)).

## ANALYSIS

### I. The claims against Burton are dismissed for lack of personal jurisdiction.

Renée Burton is Vice President of Threat Detection at Infoblox who resides in King County, Washington. Complaint ¶ 17. Defendants move to dismiss the claims against Burton for lack of personal jurisdiction.

In order for a court to exercise personal jurisdiction over a defendant, due process requires that the defendant have "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "The 'minimum contacts' required by due process depend upon whether a court is exercising general or specific jurisdiction." *Stan. Health Care v. CareFirst of Md., Inc.*, 716 F. Supp. 3d 811, 814 (N.D. Cal. 2024).

General jurisdiction applies to all claims that can be asserted against a defendant and accordingly requires "affiliations with the State [that] are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Because Burton is a resident of Washington state, her affiliations with California are not so "continuous and systematic" as to render her "essentially at home" in California. *Id.*

For a forum to "exercise specific personal jurisdiction over a defendant: (1) the non-resident defendant must purposefully direct its activities or consummate some transaction with the forum or resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice." *Found. for Anime & Niche Subcultures v. Texas Anime Conventions*, 769 F. Supp. 3d 1034, 1039 (N.D. Cal. 2025). For claims sounding in tort, courts apply the first prong's "purposeful direction test," which requires the defendant to have "(1) committed an intentional act, (2) expressly aimed

United States District Court
Northern District of California

at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162–63 (9th Cir. 2023)). A "lack of forum-state harm [may be] dispositive." *Davis*, 71 F.4th at 1163.

Plaintiffs do not satisfy the purposeful direction test. Burton is a resident of King County, Washington. Complaint ¶ 17. Plaintiffs fail to plead that her acts were either "(2) expressly aimed at the forum state" or "(3) caus[ed] harm that [she] kn[ew] [wa]s likely to be suffered in the forum state." *Foundation*, 769 F. Supp. 3d at 1039. Sky/Tek cannot allege that Burton aimed her actions "at the forum state" of California. *Id.* Nor can they, as Swiss companies, fairly argue that their harm was suffered in California. Complaint ¶¶ 14, 15. Therefore, plaintiffs fail to allege that Burton injured them in California. *Cf. Davis*, 71 F.4th at 1163.

Plaintiffs' primary argument in favor of the Court's exercise of personal jurisdiction over Burton is based on Infoblox's status as a California corporation. In plaintiffs' view, Burton's work for Infoblox, which has its principal place of business in Santa Clara, California, establishes personal jurisdiction over her as well. *See* Opposition at 22; Complaint ¶ 16. Plaintiffs also argue that Burton allegedly traveled to San Francisco in May 2024 to promote products related to her allegedly defamatory statements about plaintiffs, Opposition at 22; Complaint ¶ 20, and that "at times she was physically present in California while" "orchestrat[ing]" the allegedly defamatory campaign. Opposition at 21.

These purported contacts with California are not strong enough for this Court to establish specific personal jurisdiction over Burton. Burton's work for a California company does not establish that she aimed her actions against *plaintiffs* in California or that she "caus[ed] harm … likely to be suffered in" California. *Davis*, 71 F.4th at 1163. Similarly, that Burton "has traveled to California no more than four times in each of the last two years" does not suggest that she aimed her actions against plaintiffs in California or caused harm in California. Motion to Dismiss at 8 (citing Burton Decl. ¶¶ 7, 8). Sky/Tek tries to connect Burton to California by pointing to her attendance at a San Francisco conference in May 2024, but the only alleged connection is that Burton sought to "promote Infoblox products and services, including products Infoblox promotes as a means to protect its customers against what Burton would later refer to as VexTrio."

Complaint ¶ 20. Plaintiffs do not even allege that Burton made defamatory statements *in* California, only that Burton traveled to California for work. Complaint ¶ 20; *See Davis*, 71 F.4th at 1163 (rejecting "transitory trips into the forum state" as establishing purposeful availment). And even if she had made defamatory statements against plaintiffs in California, plaintiffs do not show why *they* would experience injury in California given that plaintiffs do not have California connections.

Even if the purposeful availment test were to apply instead of the purposeful direction test, the result would be the same. Personal jurisdiction under the purposeful availment test "exists when a defendant's dealings with a state establish a quid pro quo—where the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, and in return submits to the burdens of litigation in the State." *Id.* (cleaned up). The goal of both the purposeful availment and purposeful direction tests is to determine "whether defendants have voluntarily derived some benefit from their interstate activities such that they will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* While Burton's employment with a California company might arguably constitute a form of purposeful availment sufficient for her to be subject to personal jurisdiction as to claims regarding that employment, it does not, standing alone, render her subject to claims like plaintiffs' that do not center on that employment relationship. Burton's occasional travel is insufficient as well, as in *Davis v. Cranfield*, where, although "Cranfield employees entered Idaho several times, those transitory trips into the forum state d[id] not sufficiently reflect purposeful availment." *Id.*

Because defendants have not established that the Court can exercise general or specific personal jurisdiction over Burton, defendants' motion to dismiss the claims against her under Rule 12(b)(2) is granted.

## II. Defendants' Rule 12(b)(6) motion is granted in part.

### A. Defamation and Defamation Per Se

Plaintiffs allege that statements made on June 12, 2025 (¶ 87), August 6, 2025 (¶¶ 91, 95), August 9, 2025 (¶ 98), August 12, 2025 (¶ 100), and September 24, 2025 (¶ 118) were

defamatory. In moving to dismiss plaintiffs' defamation claims, defendants primarily argue that the "vast majority of the" allegedly defamatory statements were not "of and concerning" the plaintiffs. Motion to Dismiss at 12. And even if the statements were "of and concerning" plaintiffs, defendants argue that Sky/Tek has failed to plead that any of the statements are false; that some statements—particularly paragraphs 91(iii), 95(ii), 95(iii), 95(iv)—are not defamatory; and that other statements—particularly paragraphs 91(i), 91(v), and 98(iii)—are protected statements of opinion. Motion to Dismiss at 16–20.

**1. The "Of and Concerning" Requirement**

"The tort of defamation involves (a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (cleaned up); *see also Sanchez v. Bezos*, 80 Cal. App. 5th 750, 763 (2022). To constitute actionable defamation, a statement must also "refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "A statement is "of and concerning" a plaintiff if "the statement at issue either expressly mentions him or refers to him by reasonable implication." *Blatty*, 42 Cal. 3d at 1046; *see SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008). Whether a statement is about a plaintiff is a question of law. *SDV/ACCI, Inc.*, 522 F.3d at 959.

The statements at issue here can be grouped into three categories: a) statements that refer to Skyforge or Teknology by name or that refer to Sky/Tek's platforms—Los Pollos, Adtraficos, and Taco Loco, b) statements that refer only to VexTrio, and c) statements that do not specifically name Sky/Tek, Pollos, Adtraficos, Taco Loco, or VexTrio.

**a. Statements that Refer to Sky/Tek or its Platforms by Name**

Statements that refer to Skyforge or Teknology by name and connect them to VexTrio satisfy the "of and concerning" requirement, as defendants acknowledge. The statements in paragraphs 91(iii) and 95(ii) thus satisfy the "of and concerning" requirement.[2]

---

[2] Paragraph 91(iii) alleges that Burton identified Sky/Tek platforms, "as well as Teknology itself, as part of" VexTrio at a Las Vegas conference. Paragraph 95(ii) includes a figure identifying Teknology and Sky/Tek's platforms as among "the core VexTrio businesses," while noting that

Paragraph 95(vi) does not state a claim. It quotes Infoblox saying, "In the Swiss networks associated to the firm Teknology, VexTrio hosts landing pages for the different scams, as well as some spam-related services." As defendants point out, discussing "networks associated to the firm Teknology" is not the same thing as a statement "of and concerning" Teknology itself.

Because Los Pollos, Tacolo.co, and Adtraficos are plaintiffs' products, statements about those three products "can reasonably be understood to refer to" those products' provider. *See id.* Thus, in considering whether the challenged statements support a claim for defamation against plaintiffs, statements about Los Pollos, Adtrafico, or Tacolo.co must be considered a statement of and concerning plaintiffs. The statements in the following paragraphs are thus also statements "of and concerning" plaintiffs: paragraphs 87(i), 87(ii), 87(iii), 91(iii), 91(vii), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv).

Unlike statements about Sky/Tek's platforms, statements about individuals associated with Sky/Tek are not necessarily statements "of and concerning" Sky/Tek. The First Amendment requires that a statement "must specifically refer to, or be 'of and concerning,' the plaintiff in some way." *Blatty*, 42 Cal. 3d at 1042. Courts have interpreted the "of and concerning" requirement to be satisfied as to a corporate plaintiff where the challenged statement was about an individual and the company "bore the individual plaintiff's name" or the allegedly defamatory statement "explicitly referred to 'the *proprietor* of the firm.'" *See SDV/ACCI*, 522 F.3d at 959 (discussing *Bohan v. The Record Publ'g Co.*, 1 Cal. App. 429, 430–31 (1905); *Schiavone Constr. Co. v. Time, Inc.*, 619 F. Supp. 684, 696–97 (D.N.J. 1985)); *see also GetFugu, Inc. v. Patton Boggs LLP*, 220 Cal. App. 4th 141, 152 n.11 (2013). But as the Restatement (Second) of Torts notes, "A corporation is not defamed by communications defamatory of its officers, agents or stockholders unless they also reflect discredit upon the method by which the corporation conducts its business." Restatement (Second) of Torts, § 561, cmt. b (2026 Update).

The statements about individuals associated with Sky/Tek do not necessarily "reflect

---

"[n]ot all named business are currently operating and some listed individuals may not be involved in the core VexTrio businesses (e.g., Teknology, Los Pollos, Ads Pros / Aimed Global, Adtrafico, Taco Loco, HolaCode)."

discredit upon the method by which [Sky/Tek] conducts its business." *Id.* Paragraph 91(iv) asserts only that some "bad guys" are part of VexTrio without connecting that allegation to Sky/Tek. Plaintiffs cite to Exhibit 3 at pages 30 to 32, Dkt. No. 1-3, at *31–33, but those pages depict European men with little suggestion of what they've done aside from pose for photographs, let alone what conduct they have committed to state a claim for defamation.

Paragraph 91(viii) and paragraph 95(i) suggest that Sky/Tek affiliates Cerutti, Giulio Lingua, and Matteo Costa are "embroiled in a Russian-nexus cybercriminal organization with close ties to some of the most prolific website hackers in the world." Complaint ¶ 95(i). In the context in which the statement was made, which focused on Sky/Tek and its operations, the statements sufficiently connect those individuals to Sky/Tek's method of operating their businesses to be "of an concerning" Sky/Tek.

Paragraph 95(iii) does not state a claim because it asserts only that Los Pollos co-founder Vassilev is "involved in VexTrio" and that he "tries to balance a professional appearance with an adrenaline-filled lifestyle." That statement does not "reflect discredit upon the method by which [plaintiffs] conduct[] [their] businesses" because the statement itself only suggests that Vassilev, not Sky/Tek, is "involved in VexTrio" and concerns his personal conduct. Restatement, *supra*.

Paragraph 95(x) does not state a claim because it asserts that adtech companies and executive Cerutti are not merely intermediaries to VexTrio but "connective tissue" and "not at arm's length from either the website hackers or the scam advertisers." The paragraph only concerns what Cerutti said to a different individual about how Sky/Tek's products work and at most connects Cerutti, but not Sky/Tek, to VexTrio.

**b. Statements that Only Name VexTrio**

In interpreting the "of and concerning" requirement, the California Supreme Court has held that "where the group is large—in general, any group numbering over twenty-five members—the courts in California and other states have consistently held that plaintiffs cannot show that the statements were 'of and concerning them.'" *Blatty*, 42 Cal. 3d at 1046. Though considering an intentional-interference-with-prospective-economic-advantage claim, the California Supreme Court interpreted the "of and concerning" requirement because the claim's "gravamen [was] the



United States District Court
Northern District of California

alleged injurious falsehood of a statement." *Id.* at 1045. Similarly, in clarifying the scope of a commercial insurer's duty to defend against a disparagement claim, the California Supreme Court cited approvingly the numeric heuristic from *Blatty*, calling it the "specific reference requirement" and extended it to "a disparagement claim against a nonmedia defendant in a purely commercial dispute." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 293–94 (2014).

Here, because plaintiffs themselves allege that VexTrio "includes nearly a hundred companies and brands," Complaint ¶ 59(vi), statements about VexTrio alone that do not name plaintiffs or their products do not satisfy the "of and concerning requirement." Accordingly, paragraphs 91(v), 95(vi), 95(xi), 98(v), 100(ii), fail to state a claim for defamation.

**c. Other Statements**

Paragraph 91(i) does not state a claim because defendant Burton's presentation opening slide says only, "Let's go on a journey into the world of malicious adtech." Complaint, Exh. 3, at 3.

Paragraph 91(ii) does not state a claim because the slide merely contains a picture of Los Pollos co-founder Kroum Vassilev after a slide mentioning the "world of malicious adtech." Complaint, Exh. 3, at 3–4. The slide does not expressly tie Vassilev to the "world of malicious adtech" and in any event does not "reflect discredit" on Sky/Tek's business operations.

Paragraph 91(vi) is not "of and concerning" plaintiffs because it does not refer to plaintiffs and depicts only screenshots of purportedly fake applications on the Google Play and Apple app stores.

Paragraph 95(v) does not state a claim because it refers to entities called AdsPro and Apperito but not plaintiffs. Plaintiffs do not explain what Ads Pro or Apperito are, nor their relationship to plaintiffs.

Paragraphs 98(iii) and 98(iv) do not state claims because defendant Burton does not refer to plaintiffs specifically. In the YouTube link that plaintiffs provide, the person interviewing Burton asks her about how Los Pollos was "one part of a larger network of companies that were involved in TDS activities with VexTrio" and asked if she was surprised that seemingly

"legitimate companies" engaged in crime.[3] As with the statement about VexTrio generally, paragraphs 98(iii) and 98(iv) was a response to a question about the larger network of companies that made up VexTrio and not necessarily Sky/Tek. And for the same reason that statements about VexTrio are not statements of and concerning Sky/Tek, statements about the network of companies that make up VexTrio similarly are not of and concerning Sky/Tek.

* * *

In summary, plaintiffs plead statements "of and concerning" plaintiffs in paragraphs 87(i), 87(ii), 87(iii), 91(iii), 91(vii), 91(viii), 95(i), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv), while plaintiffs have failed to alleged statements "of and concerning defendants" in paragraphs 91(i), 91(ii), 91(iv), 91(v), 91(vi), 95(iii), 95(v), 95(vi), 95(x), 95(xi), 98(iii), 98(iv), 98(v), and 100(ii) accordingly grants defendants' motion to dismiss to dismiss as to those statements in those paragraphs.

**2. The defamatory nature of statements concerning plaintiffs**

Having established that some but not all paragraphs are "of and concerning" plaintiffs, plaintiffs still must plead that the remaining statements—87(i), 87(ii), 87(iii), 88(ii), 88(iii), 91(iii), 91(vii), 91(viii), 95(i), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv)—are false and defamatory.

*Falsity*

"The Federal Rule of Civil Procedure impose no special pleading requirements for defamation." *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021) (quoting *Croixland Props. Ltd. P'ship v. Corcoran*, 174 F.3d 213, 215 n.2 (D.C. Cir. 1999)). As a result, plaintiffs must simply plead nonconclusory facts that would make the allegedly defamatory statements false. Here, plaintiffs plead facts that would allow the Court to infer that they are not involved with VexTrio or that they do not engage in malicious advertising technology practices such as "fraudulently subscrib[ing] users to notifications" or credit card-related scams. Complaint ¶ 88(ii). Plaintiffs

[3] "News Desk: Catching Up with Renee Burton, VP Threat Intel, Infoblox," Dark Reading (Aug. 19, 2025), https://www.youtube.com/watch?v=biZAmoJkpZE. Complaint at 27 n.15.

allege at various points in their complaint that they are "law-abiding technology companies," not "part of any criminal conspiracy," "not criminals," and do not "answer … to a Russian criminal gang." Complaint ¶¶ 1–3. They point out that "[n]either Skyforge nor Teknology, nor any entity affiliated with these companies, nor any of the founders or executives of these companies, has ever been indicted or convicted or any crime anywhere in the world." Complaint ¶ 36. They explain that they "employ robust processes to try to prevent their services from being abused, and each complies fully with the laws and regulations where they operate." Complaint ¶ 38. They note that "there is no[ evidence] that Sky/Tek are involved in the so-called VexTrio." Complaint ¶ 102. And they allege that they "have no affiliation and no relationship with Russian (or any other) cybercriminal organizations, Russian criminals, or the Russian government." Complaint ¶ 111; *see also id.* ¶ 134 (denying "that Sky/Tek are involved in a Russian criminal conspiracy"). Against those alleged facts, Infoblox referred to VexTrio as a criminal enterprise and publicly accused Sky/Tek and its products of being part of VexTrio. Therefore, plaintiffs adequately plead that Infoblox's statements of and concerning Sky/Tek were false.

*Defamatory*

Defendants argue that several of the statements are not defamatory. A statement is defamatory if, from the "standpoint of the average reader" or listener, *Norse v. Henry Holt & Co.*, 991 F.2d 563, 567 (9th Cir. 1993) (cleaned up), the statement "has a natural tendency to injure a person's reputation, either generally, or with respect to his occupation." *MacLeod v. Tribune Publ'g Co.*, 52 Cal. 2d 536, 546–47 (1959).[4] Here, each of the statements found to be "of and concerning" plaintiffs are also defamatory because they either connect plaintiffs to VexTrio, which defendants allegedly identified as part of a Russian criminal enterprise, or because they accuse plaintiffs or their products of engaging in criminal activity.

*Statement of Opinion*

Defendants lastly argue that certain statements are "constitutionally protected expressions

[4] Generally, falsely accusing someone of a crime can state a claim for defamation per se. *See Barnes-Hind, Inc. v. Sup. Ct.*, 181 Cal. App. 3d 377, 385 (1986); *Fashion 21 v. Coal. for Humane Immigr. Rts. of L.A.*, 117 Cal. App. 4th 1138, 1145 n.7 (2004).

of opinion, not potentially actionable false assertions of fact." Motion to Dismiss at 19. For example, defendants argue that calling some services or websites "scams" are "the stuff of opinion signaled by rhetorical hyperbole." Motion to Dismiss at 20. Only a "statement of fact" can support a defamation action as opposed to an "expression of opinion," which cannot. *See Taus v. Loftus*, 40 Cal. 4th at 720. But "a statement of opinion that implies a false assertion of fact is actionable." *Issa v. Applegate*, 31 Cal. App. 5th 689, 702 (2019); *see also Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1157 (9th Cir. 2021). In assessing whether a statement implies an assertion of an objective fact, courts are to consider the "totality of the circumstances." *Maddow*, 8 F.4th at 1157.

Here, each of the statements of and concerning Sky/Tek imply that plaintiffs are affiliated with the criminal enterprise VexTrio. They do not "express an inherently subjective opinion that, as such, is not actionable," Motion to Dismiss at 20. The Court has already concluded that the specific statements that defendants cite as examples of "inherently subjective opinion," paragraphs 91(i), 91(v), and 98(iii), fail to state claims because they were not "of and concerning" Sky/Tek. Defendants fail to explain why the remaining statements that *are* of and concerning plaintiffs, are false, and are defamatory constitute actually protected statements of opinion. Instead, because those statements imply that plaintiffs are associated with Russian cybercrime, they are not protected statements of opinion but instead potentially actionable defamatory statements.

* * *

For the foregoing reasons, plaintiffs state claims for defamation as to paragraphs 87(i), 87(ii), 87(iii), 88(ii), 88(iii), 91(iii), 91(vii), 91(viii), 95(i), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv). The statements in the remaining paragraphs are not actionable.

**B. False Light**

"False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person…." *Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1264 (2017). Under California law, invasion of privacy protects an "*individual's* control of the process or products of his or her personal life" with respect to "aspects of life consigned to the realm of the 'personal and confidential' by strong and widely

shared norms." *Hill v. NCAA*, 7 Cal. 4th 1, 24–25 (1994) (emphasis added); *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 573 (1977) ("The interest protected in permitting recovery for placing the plaintiff in a false light is clearly that of reputation, with the same overtones of mental distress as in defamation."). Because the false light cause of action "implicates an invasion of privacy, which at common law in California is a right reserved exclusively for actual persons," courts in this district have generally concluded that corporate persons may not bring false light claims. *See Holomaxx Techs. v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1107 (N.D. Cal. 2011); *see also, e.g.*, *Kennedy Funding, Inc. v. Chapman*, 2010 WL 4509805, at *5 (N.D. Cal. Nov. 1, 2010).

Plaintiffs argue that California courts "recognize[] that corporate entities do enjoy privacy rights, and so whether a corporate entity can sustain a false light claim turns on what right was damaged or infringed." Opposition at 17. But plaintiffs' cited cases do not squarely hold that a plaintiff can sue a corporation on a false light theory. *See SCC Acquisitions, Inc. v. Super. Ct.*, 243 Cal. App. 4th 741, 756 (2015) (recognizing a corporate right to privacy in discovery); *Brentwood Commc'ns Int'l Inc. v. Fully Torqued Prods. LLC*, No. 23VECV02011, 2025 Cal. Super. LEXIS 46239, at *9–11 (Cal. Super. Ct. Aug. 1, 2025) (addressing discovery); *H&M Assocs. v. City of El Centro*, 109 Cal. App. 3d 399, 411 (1980) (concluding that plaintiff-partnership stated a claim for public exposure of private facts).

*H&M Associates v. City of El Centro* comes closest to suggesting that a non-natural person can state a claim for a privacy tort like false light. In that case, the California Court of Appeal held that the plaintiff apartment owner-partnership stated a public-disclosure-of-private-facts claim against the City of El Centro for the city manager's unprompted disclosure to the Federal Housing Authority, "the local newspaper, and several other governmental agencies, that the [apartment complex's] water service had been terminated by the City and would not be reinstated." 109 Cal. App. 3d at 404. The plaintiff apartment owner-partnership alleged that defendants spread the news of the terminated water service widely so as to "cause plaintiff the loss of tenants thereby preventing it from making the monthly payments due on the mortgages" on the apartment buildings. *Id.* In support of its recognition of the plaintiff's public-disclosure-of-private-facts

claim, the Court of Appeal cited the California Supreme Court's decision in *Vegod Corp. v. American Broadcasting Companies, Inc.*, 25 Cal. 3d 763 (1979), which stated that there is no distinction between corporations and individuals "for purposes of applying the First Amendment to defamation claims." *Id.* at 771.

The Court declines to apply the reasoning of *H&M Associates* to the false light privacy tort for two reasons. First, the decision did not consider the false light theory at issue here, whereas numerous other decisions have directly suggested that corporations may not pursue such a theory. Second, and more fundamentally, the California Supreme Court, since *H&M Associates*, has emphasized that California's invasion-of-privacy tort protects two distinct kinds of interests—informational privacy, on the one hand, and personal autonomy, on the other. *See Hill*, 7 Cal. 4th at 41. While courts (including *H&M Associates*) have recognized that non-natural persons may retain an interest in informational privacy, non-natural persons do not possess an interest in personal autonomy. And it is this interest that is protected by the false light invasion of privacy theory: "As commonly understood, a corporation … is not susceptible to the injured 'feelings' associated with invasion of privacy torts." *Kennedy Funding*, 2010 WL 4509805, at *5 (citing *Ion Equipment Corp. v. Nelson*, 110 Cal. App. 3d 868, 878 (1980)); *cf. VIRAG, S.R.L. v. Sony Computer Ent. Am. LLC*, 2015 WL 5000102, at *5 (N.D. Cal. Aug. 21, 2015) (concluding that common law right of publicity claim cannot be asserted by a corporation). Moreover, non-natural legal persons such as corporations retain the protection of the defamation tort for reputational injuries. *See Vegod*, 25 Cal. 3d at 770–71.

Because plaintiffs here are corporate persons, they cannot bring invasion of privacy claims premised on a false light theory. Defendants' motion to dismiss plaintiffs' false light claim is therefore granted. Because plaintiffs cannot cure this deficiency by amendment, the Court dismisses plaintiffs' false light claim without leave to amend.

**C. Intentional Interference with Contract.**

Infoblox moves to dismiss Skyforge's intentional-interference-with-contract claim on the ground that Skyforge has not identified the party or parties with whom Skyforge contracted or the nature of that relationship. Motion to Dismiss at 21.

Intentional interference with contract requires that a contract exist between the plaintiff and some third party, that defendants knew of the contract, that defendants' conduct hindered or prevented the contract's performance, that defendants intended to disrupt the performance of the contract, that the plaintiff was harmed, and that the defendants' conduct was a substantial factor in causing that harm. *See Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990). Intentional interference with contract is "subject to the same first amendment requirements that govern actions for defamation." *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1057–58 (9th Cir. 1990).

Taking plaintiffs' allegations as true, plaintiffs have pleaded enough to state a claim for intentional interference with contract. Sky/Tek points to several instances wherein defendants interfered with Sky/Tek's contractual relations. Sky/Tek allege that they contracted with "Hetzner, Credit Suisse, USB [*sic*], and Corner Bank S.A." Complaint ¶ 151. Defendants allegedly "targeted entities with which Skyforge had contracts" and these entities then breached or terminated contracts with plaintiffs within a month of each other at the end of 2024. Complaint ¶¶ 153-154. Sky/Tek learned in December 2024 that several banks, including Credit Suisse and UBS, had terminated their accounts and that the terminations "were the direct result of Defendants' coordinated effort to spread false information accusing Sky/Tek of being a Russian-nexus cybercriminal organization." Complaint ¶ 74. The most specific allegations concern defendants' allegedly "malicious contact with Hetzner, a web-hosting company based in Germany." Complaint ¶ 67. Sky/Tek alleges that defendants' "malicious contact with Hetzner … caused Hetzner to cancel its contract with Sky/Tek because Sky/Tek IP addresses had been reported for potential infrastructure abuse in relation to the campaign by Defendants and Qurium." Complaint ¶ 67. Taking plaintiffs' allegations as true, and drawing all factual inferences in plaintiffs' favor, the Court concludes that Sky/Tek has alleged enough facts to make plausible the inference that defendants intentionally interfered with Sky/Tek's contracts.

**D. False Advertising**

"To assert a false advertising claim under the Lanham Act, a plaintiff must allege five elements: (1) a false statement of fact in a commercial advertisement about its own or another's product that (2) actually deceived or tended to deceive a substantial segment of its audience, (3)

United States District Court
Northern District of California

was material to purchasing decisions, (4) entered interstate commerce, and (5) injured or is likely to injure the plaintiff, either by direct diversion of sales from it to the defendant or by a lessening of the goodwill associated with its products." *Automated Pet Care Prods., LLC v. PurLife Brands, Inc.*, 703 F. Supp. 3d 1022, 1031 (N.D. Cal. 2023) (citing *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012)). A false statement may be "literally false or … literally true but likely to mislead or confuse consumers." *Id.* (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)) (cleaned up).

Plaintiffs plausibly plead that many of the statements defendants allegedly made violate the Lanham Act's prohibition on false advertising. Plaintiffs allege that they are not involved in "any criminal conspiracy—Russian or otherwise" and that they are "not controlled by anyone other than their duly appointed and well-respected, successful executives, and they answer to their shareholders, not to a Russian criminal gang." Complaint ¶ 3. Because a false statement for a false advertising claim can be "literally true but likely to mislead or confuse consumers," and taking as true that Sky/Tek is not associated with VexTrio, plaintiffs have pleaded false or misleading statements about Sky/Tek's products in paragraphs 87(i), 87(ii), 87(iii), 88(ii), 91(iii), 95(ii), 91(iii), 91 (vii), 91(ix), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv). All of these paragraphs allege statements that refer directly to plaintiffs' offerings, specifically Los Pollos, Adtrafico, or TacoLoco, and tie them to VexTrio in a way that is "likely to mislead or confuse consumers," *Southland Sod Farms*, 108 F.3d at 1139.

Defendants argue that their alleged statements are not "commercial advertising or promotion" because they were made at conferences or involved "highly technical reporting published on Infoblox's websites." "Commercial advertising or promotion" means "commercial speech … for the purpose of influencing consumers to buy defendants' goods or services, and … that is sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021); Motion to Dismiss at 23. Infoblox allegedly "evangelizes" its products by having its employees "create technical content for marketing purposes." Complaint ¶ 49. Infoblox publishes "marketing blogs" or "marketing blog posts" or discusses plaintiffs in marketing materials, and those marketing materials connect plaintiffs to

United States District Court
Northern District of California

VexTrio. *See, e.g.*, Complaint ¶¶ 5–7, 22–24, 44, 48–49, 58–62, 159. "Infoblox uses its blog posts to sell the DNS Threat Intelligence product," which "analyzes pre-attack telemetry via DNS and uncovers threat actor behavior in real time, revealing malicious campaigns during their planning phases." Complaint ¶ 45, 46. In other words, Infoblox uses its blog posts to promote its offerings and "explain[] how Infoblox's threat intelligence and threat defense has successfully helped organizations stop DNS threats." Complaint ¶ 46. Infoblox's posts thus plausibly resemble the supplement guide in *Ariix*, which was published "mainly with the economic goal of furthering [the publisher's] self-interests beyond simply benefitting from sales of the publication." 985 F.3d at 1117. While some of Infoblox's posts may be technical or difficult for an outsider to understand and the factual record may show that some of Infoblox's blog posts or conference presentations were not commercial, at the pleadings stage Sky/Tek has plausibly alleged that Infoblox's statements involved commercial advertising or promotion.

Finally, defendants argue that the statements at issue do not concern Sky/Tek's "goods, services, or commercial activities" as required by 15 U.S.C. § 1125(a)(1)(B). Motion to Dismiss at 23. But as discussed above, statements that refer to Sky/Tek or Sky/Tek's platforms logically refer to Sky/Tek's "goods, services, or commercial activities."

Accordingly, defendants' motion to dismiss plaintiffs' false advertising claim under the Lanham Act is denied.

### E. Civil Conspiracy

Civil conspiracy under California law provides for imposing vicarious liability on entities that commit torts who "share … a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994); *see also Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1016 (N.D. Cal. 2024). Civil conspiracy is not a standalone cause of action under California law and is instead a theory for holding a party liable on a different cause of action. *See Matthews*, 769 F. Supp. 3d at 1016–17.

Plaintiffs fail to plausibly plead civil conspiracy because they do not plead that third parties conspired with Infoblox to engage in the alleged tortious conduct. Plaintiffs plead that Infoblox's "co-conspirators [] committed overt acts, including" researching Sky/Tek's business,

contacting Sky/Tek business partners, and making defamatory statements on Infoblox's website. Complaint ¶ 167. But plaintiffs do not plead who those co-conspirators are, besides referring to them as "third parties, including unnamed co-conspirators." Complaint ¶ 166. And they do not plead in a non-conclusory fashion what those co-conspirators did. In the absence of non-conclusory allegations regarding the identities of defendants' alleged co-conspirators or the actions of those co-conspirators for which plaintiffs seek to hold defendants liable, plaintiffs fail to plead a plausible civil conspiracy claim.

## III. Anti-SLAPP Motion to Strike

Defendants move to strike plaintiffs' state law claims under California's anti-SLAPP statute, which provides that a cause of action "against a person arising from any act of that person in furtherance of the person's right of petition or free speech … shall be subject to a special motion to strike, unless the court determines that … there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16(b)(1). "To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). If defendants can make their prima facie showing, then "the burden shifts to plaintiff to demonstrate a probability of prevailing on the merits of each of plaintiff's claims." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).

With respect to the state law claims dismissed herein, defendants have satisfied the first step of the anti-SLAPP analysis by demonstrating that the claims "arises from an act in furtherance of the defendant's constitutional right to free speech." Plaintiffs sue Infoblox over blog posts and statements it and its employees made in interviews and at conferences. California Code of Civil Procedure § 425.16(e)(3) and (4) define an "act in furtherance of a person's right of petition or free speech" to include "(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Given that defendants' alleged statements concern cybersecurity, malicious actors, and Russian criminals, the

United States District Court
Northern District of California

speech goes to the heart of an important public issue. *See Gangland Prods.*, 730 F.3d at 955 n.4 (quoting, among other cases, *Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132 (2003), for the proposition that "an issue of public interest is 'something of concern to a substantial number of people'").

Accordingly, defendants have made a prima facie showing that the conduct at issue here involved actions in furtherance of their constitutional speech rights.[5] The burden therefore shifts to the plaintiffs to demonstrate the potential merit of their state law claims. Because defendants challenge only the purported legal shortcomings of plaintiffs' complaint, the Court considers the motion under the Rule 12(b)(6) standard. *See Maddow*, 8 F.4th at 1155–56.

As noted above, plaintiffs' complaint states a valid defamation claim in part and a valid intentional interference with contract claim. Accordingly, defendants' anti-SLAPP motion is denied as to the potentially defamatory statements identified above and as to the intentional interference with contract claim. Because plaintiffs cannot show a possibility of success on their false light claim or a possibility of success on any of their claims against Burton, defendants' anti-SLAPP motion is granted as to those claims.

With respect to the remaining state law claims dismissed with leave to amend in this order, the Court will defer consideration of Infoblox's motion until after plaintiffs have had an opportunity to amend. *See Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).[6]

**IV. Motion to Stay Discovery**

Defendants move to stay discovery in this action until the Court rules on its motion to dismiss. Because the Court has now ruled on defendants' motion, defendants' motion is denied as moot.

---

[5] Although it is possible that some of the conduct giving rise to plaintiffs' intentional interference with contract claim would not meet this standard, defendants' anti-SLAPP motion as to that claim fails at the second step because plaintiffs have stated a valid claim. The Court will therefore assume that defendants have made a prima facie case as to all of plaintiffs' state law claims.

[6] Although the anti-SLAPP statute itself prohibits courts from granting leave to amend, that provision is inconsistent with the Federal Rules and thus does not apply in federal court. *See Planned Parenthood*, 890 F.3d at 834–35.

United States District Court
Northern District of California

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss the claims against defendant Burton for lack of personal jurisdiction is granted. Defendants' motion to dismiss plaintiffs' defamation claim is granted in part and denied in part. Specifically, plaintiffs fail to plead defamation as to paragraphs 91(i), 91(ii), 91(iv), 91(v), 91(vi), 95(iii), 95(v), 95(vi), 95(x), 95(xi), 98(iii), 98(iv), 98(v), 100(ii). Plaintiffs plead defamation for paragraphs 87(i), 87(ii), 87(iii), 91(iii), 91(vii), 91(viii), 95(i), 95(ii), 95(iv), 95(vii), 95(viii), 95(ix), 98(i), 98(ii), 100(i), 100(iii), 100(iv), 118(i), 118(ii), 118(iii), and 118(iv).

Defendants' motion to dismiss plaintiffs' false light and civil conspiracy claims is granted. Defendant's motion to dismiss plaintiffs' intentional interference with contract and false advertising claims is denied. Defendants' motion to stay discovery until the publication of this Court's order is denied.

All of the dismissed claims are dismissed without prejudice and with leave to amend except for plaintiffs' false light claim, which is dismissed without leave to amend and with prejudice, and defendants' claims against Burton, which are dismissed without prejudice but without leave to amend. Any amended complaint must be filed within 28 days of this Order.

The Court denies defendants' anti-SLAPP motion as to the claims not dismissed in this order, grants the motion as to plaintiffs' false light claim and plaintiffs' claims against Burton, and defers its consideration as to the claims dismissed with leave to amend.

**IT IS SO ORDERED.**

Dated: September 14, 2026

P. Casey Pitts
United States District Judge